The Ohio Thresher and Engine Company *v.* Hensel *et al.*

No. 1,035.

## The Ohio Thresher and Engine Company *v.* Hensel et al.

Contract.— *Sale.*— *Warranty.*— *Rescission of Contract.*— *Recovery of Purchase-Money.*—*Return of Property.*—*Answer of Failure of Consideration.*—*Vendor and Vendee.*—The rule that where property has been unconditionally sold, with a warranty, the purchaser can not, in the absence of fraud, because of the breach of the warranty, and without the consent of the seller, rescind the contract and recover back the purchase-money paid, does not apply where the vendor has agreed to take the property back and cancel the notes in case the property fails to fulfill the warranty, and in such case, the vendee having offered to return the property, and the vendor having refused to accept it, the vendees were excused from making a specific tender of the same to the vendor. In such case, in an action for the purchase-money, the vendees may set up, by way of answer, a failure of consideration.

Vendor and Vendee.— *Contract of Sale.*— *Written and Parol Warranties.*—*Notice.*—If vendees, purchasers of a threshing machine, before they accepted the same, and before they executed notes in payment of the purchase-price, tested the separator, and found that it did not work, and refused to take it and to execute notes therefor, and then the vendor undertook to place the machine in good working order, and, after an attempt to do so, informed the vendees that the machine was now in good working condition, and warranted it to perform good work, and upon the strength of this assurance the vendees executed notes therefor, relying upon the parol warranty, the warranty was valid, and under it the vendees were not required to give written notice, as stipulated in the previous written contract of warranty; and the vendor having acted upon the notice received, the failure to give written notice, even if required, does not debar the vendees from the benefits of the warranty.

Pleading.— *Warranty, Breach of.*—*How Pleaded.*—In pleading a breach of warranty, it is sufficient, generally, to plead the results of defects rather than the defects which caused the results.

Same.—*Defense.*—*Answer.*— *Counterclaim.*—*Contract, Stipulation in as to Defense.*—Where it is stipulated in a contract of sale, that no action for a breach of the warranty, and no claim for recoupment of damages shall be made after the expiration of one year, such stipulation can be made available only to a counterclaim, and not to any defense in bar of a suit upon the contract.

Same.—*Promissory Note.*— *Want of Consideration, How Pleaded.*—In

The Ohio Thresher and Engine Company *v.* Hensel *et al.*

an action on a promissory note, it is always proper to plead in general terms the defense of total failure of consideration.

SAME.—*Cross-Complaint.—Parties Plaintiff.*—A cross-complaint must be good as to all the cross-complainants, or it will be good as to none.

PRINCIPAL AND SURETY.—*Defenses.—Practice.*—Sureties may avail themselves of all defenses to which their principals are entitled.

RECORD.—*Exhibit.—Referred to by Separate Pleadings.—One Copy Sufficient.*—Where an exhibit is referred to in the same manner in separate pleadings in the same cause, one copy of such exhibit in the record is sufficient.

VERDICT.—*Sustained by the Evidence.*—That the evidence is sufficient to sustain the verdict, see opinion.

PROMISSORY NOTE.—*Agents of Vendor as Sureties on Vendee's Note.— Extent of Liability.—Complaint.*—In an action on a promissory note given in payment of the purchase-price of machinery, which the vendor's agents had signed as joint makers or sureties, it was not error to refuse to instruct the jury, that the defendants, the said agents, would be personally liable on the note in suit in the event they failed to discharge certain duties enjoined upon them under their contract of agency with the plaintiff. The case made against such defendants, in the complaint, being that of joint makers or sureties, they could only be held liable to that extent.

INSTRUCTION TO JURY.—*Warranty.—Estoppel.*—Where an instruction in an action on a promissory note given in payment of the purchase-price of a machine assumes that the only warranty which it is proper for the jury to consider is the written one filed with the pleadings, and charges the jury that the defendants were estopped to claim damages by way of counterclaim, because of the stipulation contained in the written warranty that all liability upon the same ceased with the expiration of the year within which the sale was made, according to stipulation in the written warranty,—it was not error to refuse to give such instruction where the defendants rely upon a parol warranty of which there is some evidence.

SAME.—*Promissory Note.—Assuming Obligation of Payer.—Extent of Liability.—Notice.*—Where an instruction proceeds upon the theory that A. would be liable on the note in suit in any event, inasmuch as he knew, or with reasonable care might have known, before he took the place of B. as payer of the note, that the machine, for which the note was given in part payment of the purchase-price, was defective, for which reason he could not reap the benefits of the warranty,—it was not error to refuse to give such instruction, because there was no evidence that A. assumed any obligations beyond the scope of those resting upon the original purchasers.

EVIDENCE.—*Promissory Note.—Assignment.—Knowledge of by Payer.*— In an action on a promissory note, one of the payers of the note

was permitted to testify that he first learned in 1892, that the note in suit, and other notes given for the machine, had been transferred. Such testimony could not have injured the plaintiff, in view of the fact that evidence had already been introduced, without objection so far as disclosed in appellant's brief, that such notes had been assigned by appellant (plaintiff below) to a bank before maturity, and had been transferred back before maturity.

From the Marshall Circuit Court.

*E. C. Martindale,* for appellant.

*C. Kellison,* for appellees.

REINHARD, J.—This action was instituted in the court below, by the appellant against the appellees, on a promissory note given in part consideration of a grain separator sold by the appellant to Andrew C. Hensel and Lawrence W. Goodyear, with one James C. Nifong as surety.

The appellees filed answers and cross-complaints, setting up certain warranties and the failure thereof, and claiming damages.

Replies and answers to the cross-complaints were filed. There was a trial by jury, and a verdict for the appellees for damages, and upon this verdict, over various motions by the appellant, the judgment was rendered, from which this appeal is prosecuted.

In order to obtain a more intelligent comprehension of the issues and the questions to be determined, it will be proper to look somewhat minutely to the pleadings.

The complaint avers, in substance, that the appellant is a corporation under the laws of the State of Ohio, and that the appellees, Hensel, Goodyear, and Nifong, are indebted to it upon a promissory note, which is in words and figures as follows: [A copy of the note in suit is then set forth *in haec verba.*

It is further averred that the note was given as a part of the consideration for a grain separator sold by the ap-

pellant to the appellees Hensel and Goodyear, through
and by its agents, Edward Q. Laudeman and John W.
Vollmer, and that the appellee, Gottlieb Grimm, shortly
after the appellees Hensel and Goodyear had purchased
said separator of appellant, and settled for the same, and
executed the note in suit, purchased the interest of said
Goodyear in and to said separator, the same being an
equal one-half thereof, and assumed and agreed, as a
part of the consideration, or as the entire consideration
thereof, the payment of the note in suit, with other notes
given therefor; he, the said Grimm, assuming all the
liability of the said Goodyear for the payment of said
separator, taking the place of the said Goodyear in the
payment thereof, and appellant avers that said Goodyear
is now, and was, at the time of the beginning of this
cause, notoriously insolvent. And the appellant avers
that the appellees Laudeman and Vollmer indorsed the
note in suit to the appellant under their firm-name of
Laudeman & Vollmer, in writing, on the back of said
note, and which indorsement is made a part hereof, as
sureties upon said note for the payment thereof; that
said note, with the interest and attorney's fees, as set
forth therein, is now due and wholly unpaid. Where-
fore, etc.

The appellee Grimm filed a separate demurrer to the
complaint, the overruling of which is assigned by him
as cross-error.

The appellee Goodyear then filed a demurrer to the
complaint, which was also overruled, and he has like-
wise assigned cross-error upon this ruling.

Thereupon all the appellees but Grimm filed an an-
swer to the complaint, substantially as follows: That
on or about the 26th day of May, 1891, the appellees
Hensel and Goodyear purchased a separator of the appel-
lant, and that the note sued on, together with two other

notes of like tenor (except that John Nifong was surety on the second one and William Straudeman on the third one), each for the sum of $135, payable in one and two years later than the one sued on, respectively, were executed by said Hensel and Goodyear for the purchase-price of said separator, which purchase-price was $405; and that said notes are identical with the one sued on and those mentioned in appellant's complaint; that at the time of said purchase appellant warranted said separator to do good work, and to be capable of doing good work, in cleaning, separating, and threshing grain and seed, a copy of which written and printed warranty is filed herewith, made a part hereof by reference, and is marked "Exhibit A"; that afterwards, said appellees, relying on said warranty, received a separator of the size and dimensions named in said order; that said separator never fulfilled, and never was capable of fulfilling, the conditions of said warranty, or of any material part thereof; that although said appellees applied the proper power to said separator, and operated and managed it by skillful and capable operators, said separator did not do good work, in this, that it did not thresh clean, but carried large quantities of unthreshed grain through the cylinder which passed away with the straw; that it did not properly separate the grain and seeds from the straw and chaff, and that large quantities of grain were carried with the straw and chaff onto the stack, and were wasted and lost to said appellees Hensel and Goodyear, and to their customers; and that said separator broke large quantities of the kernels of wheat and other grain and seed, and thereby injured and destroyed the same; and that after the appellee Goodyear sold his interest to the appellee Grimm, as set forth in the complaint, said separator continued to do bad work and to waste the grain and seed as aforesaid; that the appellees

complied with all the conditions of said warranty on their part, and gave the appellant notice, by telegraph, that said separator was not doing good work, and requested it to send an expert on or about the 27th day of July, 1891; that in response to such notice appellant sent one William Ackerman, one of the directors of said company, and one of the general business managers thereof, to correct the defects in said separator, and said Ackerman, claiming to be an expert, did make some alterations therein, and then represented to the appellees Hensel and Goodyear that said separator would now do good work; that at the same time and visit said Ackerman asked the appellees Goodyear and Hensel to execute said notes for the purchase-price of the machine, assuring and promising them that if they would execute said notes, the company would make said separator fulfill all the conditions of said warranty; and at the same time said Ackerman promised and agreed, for and in behalf of said company, that the company could and would make said separator do as good work as any first class machine in use of the same size and capacity was capable of doing; that relying on said warranties, and not knowing that said machine was incapable on account of its original construction and want of adaptation of parts, of doing good work, the appellees Hensel and Goodyear, with appellee Nifong as surety, executed and delivered said notes to the appellant, and that said notes were executed on or about the 31st day of July, 1891, and dated back, at the request of appellant's said agent, to the 21st day of July, 1891; that after the execution of said notes, said separator continued to do bad work as heretofore stated, and under skillful and proper management said appellees were scarcely able to thresh enough grain with said separator to pay the running expenses of said business, much less anything for their

own services or the money invested in the business, all of which was caused by the defects in said separator as aforesaid; that afterwards said company sent other experts, from time to time, to correct the defects in said separator, and it continued to assure the appellees that they would succeed in making it do good work; that on or about the end of September, 1891, the appellee Grimm purchased the one-half interest of the appellee Goodyear in said separator, assuming and agreeing, as the consideration therefor, to pay jointly with said Hensel said notes, and to assume the liability of said Goodyear on said notes, and succeeded to the rights of said Goodyear in said contract; that Grimm, at the time he purchased said interest of Goodyear, did not know that said separator was incapable of doing good work, but appellees aver that said separator was, in its original construction and want of adaptation of parts, incapable of fulfilling the conditions of said warranties, or either of them, and said Grimm being ignorant thereof, and relying on said warranties, purchased said interest as aforesaid; that after the purchase of said interest by Grimm, the separator continued to do bad work, as above set forth; that it failed to thresh clean or to do good work in threshing grain and seed; that it failed, under proper and skillful mangement, and with the proper power applied, to separate grain and seed from the straw and chaff, and large quantities of grain and seed were carried along with the straw on the stack and wasted; it continued to break the kernels of grain and to destroy and injure the value of large quanties of grain, and that said separator was not capable of doing one-half the work that average separators of like size and dimensions were, and are, accustomed to do in threshing and separating in said county; that during all this time appellees Hensel and Grimm were making protest by letter and otherwise to said com-

pany, and the appellant was continuing to assure appellees that it could and would make said separator fulfill the conditions of said warranty, and it urged appellees to keep the separator, and promised that if it failed to correct the defects in it, it would take it back and surrender and cancel said notes; that after repeated efforts on the part of appellant, and when it became apparent to appellees that said separator was radically defective in its construction and adaptation of parts, as above stated, appellees Hensel and Grimm offered to return said separator to the appellant, and requested and demanded the cancellation of said notes, in the month of December, 1891, but that appellant refused to receive said separator or to return or cancel said notes, or either of them; that appellees Vollmer and Laudeman indorsed said notes without any consideration therefor, and that they are accommodation indorsers only; that by reason of the condition and defects of said separator, as above set forth, the same was, and is, wholly worthless, and of no value whatever as a separator, and appellees say that the consideration for said notes, and each of them, has wholly failed. Wherefore appellees pray judgment for their costs, and all proper relief.

The second paragraph was a general answer by the same appellees, that the note sued on, and the other notes given contemporaneously with it, were executed without any consideration whatever.

The exhibit filed with the first paragraph of the answer, containing the warranty therein relied upon, is as follows:

"BREMEN, IND., May 26, 1891.

"To the Ohio Thresher and Engine Company, Upper Sandusky, Ohio:

"You will please ship for the undersigned, to or in care of Laudeman & Vollmer, at Bremen, by the route

you consider best and cheapest, on or about the —— day of ——, 189—, one or more improved No. —— separators, with 32-inch cylinder and 48-inch separator, with thimble skein truck wagon under separator, and whiffletrees and neck-yoke; also one 18-foot straw stacker complete, with hoisting windlass, and the fixtures and extras as you usually furnish them.

"This certifies that the undersigned agree to receive the said machinery on its arrival, subject to all the conditions of the warranty printed below, and pay, in cash, the freight and charges thereon from the factory; and, also, agree to pay to your order, at the time and place of delivery above named, the further sum of —— dollars, as follows:

"Note due December 1, 1891, for $135; note due December 1, 1892, for $135; note due December 1, 1893, for $135. Said notes to be made payable to the order of the Ohio Thresher and Engine Company, and each bearing interest at highest lawful rate (not exceeding ten per cent.) from date of delivery of said machinery until paid.

"The undersigned hereby agree to fully settle for the foregoing machinery before it is delivered to them, by paying said cash (if any) and giving said notes and a mortgage on said machinery, and also further approved security, as follows:

"WARRANTY ON THIS MACHINERY.

"This machinery is ordered, purchased, and sold, subject to the following express warranty and agreement, and none other, viz: That this separator is well made and of good materials, and with good management is capable of doing a good business in threshing, separating, and cleaning grain and seeds. Conditioned that there shall be furnished and applied sufficient motive power and proper appliances to drive this separator to its proper speed, capacity, and power. Conditioned, also,

The Ohio Thresher and Engine Company *v.* Hensel *et al.*

that upon starting this separator the undersigned purchasers shall intelligently follow the printed hints, rules, and directions of the manufacturers, and if, by so doing, they are unable to make it operate well, written notice, stating wherein it fails to satisfy the warranty, is to be immediately given by the undersigned purchasers to the Ohio Thresher and Engine Company, at Upper Sandusky, Ohio, and also to the dealer through whom purchased, and reasonable time allowed to get to it and remedy the defect (if any), unless it is of such a nature that they can advise by letter, and the purchasers hereby agree to render necessary and friendly assistance. But if the purchasers fail to make it perform, through improper management, or lack of proper appliances, or motive power, or speed, or neglect to observe the printed or written directions, then the said purchasers are to pay all the necessary expenses incurred. Deficiencies in general adaptation for threshing, separating, and cleaning are expressly agreed by the undersigned to be reported in writing, as above stated, within five days after starting the separator, and not after continued use or injury to the machine; and it is hereby expressly agreed that use without such written notice is conclusive evidence of satisfaction and fulfillment of all warranty. It is expressly understood and agreed that all warranty on this separator terminates and expires, and all liability on the part of the Ohio Thresher and Engine Company to an action for a breach of warranty or recoupment for damages, set off or otherwise, ceases entirely at the close of this year, any statute of limitations to the contrary notwithstanding. Also, that if any part of said separator (except the belting) fails during this year in consequence of any defect in material of said part, the Ohio Thresher and Engine Company have the option to repair the same or to

furnish a duplicate of said part, free of charge, except freight, after presentation of the defective piece, clearly showing a flaw in the material, at the factory, or to the dealer through whom the machinery was bought, at any time within this year, but deficiencies in any pieces not to condemn other parts.

(Sig.)                          A. C. HENSEL,
                                L. W. GOODYEAR.

"Postoffice, Plymouth, county of Mar., State of Indiana.

"This order is sent by Laudeman & Vollmer."

A motion to strike out certain portions of the answers was overruled, but, as no available error could well be predicated upon this ruling, it is not urged by the appellant that we should pass upon it. The appellant demurred to each paragraph of the foregoing answer, which demurrer was overruled, and an exception reserved. It is somewhat doubtful, in our opinion, whether the form of the demurrer to the answer is joint or several, but in view of the conclusion reached by us we shall undertake to determine the questions attempted to be presented upon the theory that the demurrer is properly addressed to each paragraph separately.

It is the contention of the appellant, in the first place, that the facts set forth in the first paragraph of the answer can not be properly pleaded by way of answer, but must be set up in a counterclaim, and cites in support of this position the case of *Marsh* v. *Low*, 55 Ind. 271 (274), in which it was said that "where property has been unconditionally sold, with a warranty superadded, in the absence of fraud, the purchaser can not, because of breach of the warranty, without the consent of the seller, rescind the contract and recover back the purchase-money paid, as for money paid upon a consideration which has failed, or defend against the collection of the

purchase-money upon the ground of want or failure of consideration. The remedy of the purchaser in such case is an action for a breach of the warranty; and the remedy may, doubtless, be enforced in a proper case, by way of recoupment or counterclaim.''

It is urged by the appellant, that the absence of any averment of fraud in the paragraph under consideration brings the case at bar squarely within the rule laid down in the case cited. The appellees, on the other hand, contend that the language used by the Supreme Court in the quotation was not necessary to the determination of the questions decided in that case, and is, therefore, at most but a *dictum* of the judge who wrote the opinion.

However that may be, we think the rule laid down in the above quotation not applicable to the case before us. The rule enunciated by the Supreme Court is an express assumption that the sale was an unconditional one. The facts averred in the pleading which we are now considering show that the appellant agreed to take the machinery back and cancel the notes in case the separator failed to fulfill the warranty as modified by the oral agreement pleaded.

It is further averred, as we have seen, that the appellees offered to return the machinery, and demanded a cancellation of the notes, which was refused. It is fully shown, we think, not only that the separator failed to fulfill the warranty, but that it was absolutely worthless. Under these circumstances, we are of opinion that the appellees had the right to treat the sale as rescinded, and set up the facts pleaded as an answer of failure of consideration of the note sued upon. *Dill* v. *O'Ferrell*, 45 Ind. 268; *Merchants, etc., Bank* v. *Fraze*, 9 Ind. App. 161.

Moreover, a tender of the machinery back to the appellant was not necessary, as it was averred that the appellees offered to return the machinery, but the appellant

refused to receive it.  This was a sufficient excuse for the failure to make a specific tender, even if the separator had not been alleged to be worthless.  *Campbell* v. *Wray*, 5 Ind. App. 155.

It is further urged against this answer, that it shows affirmatively that appellees had not complied with the condition in the warranty which required them to give notice in writing of any defects in the machinery.  The answer does not rely upon the written warranty alone. It also sets up a parol warranty made subsequently to the written one, and upon the agreement of appellees to execute the notes, which the · refused to do, it is alleged, until the appellant agreed to make the machine work.

It is also averred that the appellees notified the appellant by telegram, that the machine would not work as warranted, and that thereupon repeated efforts were made by the company to place it in good working condition, but without success.  The only object of the written notice must have been to apprise the appellant of the particular defects in the machinery.  When the appellant was informed of these defects, and undertook to remedy them, we think it waived the written notice required in the warranty.

Upon the subject of waiver of written notice, see, *Nat'l Bank & Loan Co.* v. *Dunn*, 106 Ind. 110.

Hence, even if the written warranty stood alone, under the facts pleaded the appellees are excused · from giving the written notice therein required.  But if the parol warranty was in force, no such notice was necessary. That the latter warranty was valid, if it existed, we think there can be no doubt.

If the appellees, before they accepted the machine, and before they executed the notes, tested the separator, as alleged, and found it did not work, and refused to take it and to execute the notes, and then the appellant un-

dertook to place the separator in good working order, and, after an attempt to do so, informed the appellees that the machine was now in good working condition, and warranted it to perform good work, and upon the strength of this assurance the appellees executed the notes, relying upon the parol warranty, the latter was valid, and if, by the terms thereof, no written notice was required, the appellees were not bound to give any.

It does not appear, moreover, that, the appellant was in any way injured or misled by the failure of appellees to give a written notice, but that it acted upon the notices received, and repeatedly undertook to remedy the defects in the machinery, but without success. We do not think that the failure to give written notice debars the appellees from the benefits of the warranty. Besides, it is averred that the separator was inherently defective, and incapable of being made to do good work. Hence, when the appellant attempted to remedy the defects, and failed, the breach of the warranty was complete, notwithstanding the failure to give the written notice required in the written warranty. *McCormick Harvesting Mach. Co.* v. *Gray*, 100 Ind. 285.

In addition to this, the answer alleges that the appellees complied with all the conditions of the warranty, and as there is nothing in the answer that shows affirmatively that this was not done, the general averment, when construed in connection with the facts averred specially, must be held to constitute a substantial compliance with such conditions.

Nor do we think the contention that the answer fails to point out the particular defects in the machine can prevail.

It is charged that "the machine did not thresh clean, but carried large quantities of unthreshed grain through the cylinder, which passed away with the straw and

chaff onto the stack, and was wasted and lost to said defendants Hensel and Goodyear, and to their customers; and that said separator broke large quantities of the kernels of wheat and other grain and seed, and thereby injured and destroyed the same,'' which condition of the separator continued after Goodyear sold his interest to Grimm, and that under proper and skillful management ''said defendants were scarcely able to thresh enough grain with said separator to pay the running expenses of said business''; and that ''the said separator was not capable of doing half the work that average separators of like size and dimension were and are accustomed to do in threshing and separating in said county''; ''that by reason of the condition and defects of said separator above set forth, the same was, and is, wholly worthless and of no value whatever as a separator.''

We think these averments abundantly specify the imperfections and defects in the machine.

It was said, by the Supreme Court, in *McCormick Harvesting Mach. Co.* v. *Gray, supra:* ''The imperfections specially mentioned, the heavy draft and the great weight upon the horses, were breaches of the warranty, and it could not be incumbent upon the defendant to show what defect in the construction caused these results.''

The vices in the machine in the present case were as clearly pointed out in the answer as those in the case cited, and we think the specification sufficient. This conclusion does not, in the least, conflict with the cases cited by the appellant's counsel. *Flint* v. *Cook,* 102 Ind. 391; *McClamrock* v. *Flint,* 101 Ind. 278.

It is further insisted that the defense set up in the answer can not avail, because it is stipulated in the contract that no action for a breach of the warranty, and no claim for recoupment of damages, shall be made after

the expiration of the year 1891. If this contention is of any benefit to the appellant, it can be made available only to the counterclaim, and not to the answer. If the defense is a valid one, the appellees have a right to invoke it at any time an action is instituted on the notes. The limitation attempted to be established by the contract applies only to an action or cross-action upon the warranty, and not to any defense in bar of any suit upon the notes.

The appellant contends, however, that even if the answer must be held sufficient as to the other appellees, it is not good as to Laudeman & Vollmer.

We are unable to share this view. The appellees last named are shown, by the averments of the complaint, to sustain to the other appellees (Hensel and Goodyear) the relation of sureties. Sureties may avail themselves of all the defenses to which their principals are entitled. This proposition is too plain to require the citation of authorities.

We think the first paragraph of this answer sufficient.

The second paragraph, as we have shown, relies upon a total want of consideration.

Appellant thinks, under the authority of *Marsh* v. *Low,* *supra,* that this defense is not allowable. We do not so understand the holding of that case. It is always proper to plead this defense in general terms to an action on a promissory note. In this respect the rule is different from that applying to a plea of illegality of consideration, for the facts constituting the illegality must always be stated. Work's Prac. and Plead., section 602.

The appellee Grimm filed a separate answer in two paragraphs. The overruling of the second paragraph of this answer is relied upon as constituting error.

The substance of the averments of this paragraph is that the note sued on, together with the other notes given

at the same time (describing them), was given without any consideration whatever, and that appellee Grimm's promise and agreement to pay the notes sued on, as set forth in the complaint, was made without any consideration whatever.

This paragraph stands upon precisely the same footing as the second paragraph of the answer of the other defendants. It is a plea of a total absence of consideration. It does not come within the range of those cases which hold that a surety or joint promisor may not plead in answer to a complaint upon the note or obligation signed by him, that such note or obligation was executed without any consideration as to him individually. The plea in the present case is much broader, and asserts, in effect, that it was without consideration as to any of the makers. It was, therefore, sufficient, and the demurrer to it was properly overruled.

The appellees Hensel and Goodyear filed a cross-action against the appellant, setting up a counterclaim by reason of the warranty and breach thereof, and praying judgment for damages. The averments of the counterclaim are, in most respects, the same as those in the first paragraph of the answer, with some additional averments showing the damages sustained, and praying judgment for the same.

The sufficiency of this pleading is called in question by an assignment of error that it does not contain facts sufficient to constitute a counterclaim, and by an additional assignment upon the overruling of the motion in arrest of judgment upon the cross-complaint.

The objections pointed out to the cross-complaint, except those to be presently noticed, are substantially the same as those urged against the first paragraph of the answer, and what we said with reference to that pleading applies, in the main, to the one under immediate

consideration. The appellant, however, further contends that the cross-complaint is radically defective for the reason that the cross-complainants have not made the written contract of warranty upon which it is founded an exhibit to such cross-complaint. It is admitted by counsel for appellee, that the exhibit mentioned is copied into the record as "Exhibit A," but it is contended that this copy was inserted by virtue of the reference in the first paragraph of the answer, and that such exhibit should have been again copied in connection with the cross-complaint. We think, however, that one copy was sufficient. The exhibit was identified in the same manner in both pleadings, and we are unable to conceive by what rule of good pleading a repetition of the copy of the contract in the record is required. See Works' Prac. & Plead., section 415; *Scotten* v. *Randolph,* 96 Ind. 581; *Wadkins* v. *Hill,* 106 Ind. 543.

The further objection is made that there is not a sufficient averment in the counterclaim, that proper and correct tests were made of the machine before it was rejected. There is no merit in this objection. This is so, if for no other reason, because it is alleged that the machine was radically defective, and could not be made to do proper work.

It is also contended that appellee Goodyear was improperly joined as a cross-complainant. Of course the cross-complaint must be good as to all the appellees joining therein or it will be bad as to all.

It is averred in the cross-complaint, that Goodyear had transferred his interest in the machine to Grimm, and that the latter had assumed all the liability of the former upon the note, and had succeeded to all the rights of Goodyear under the warranty. If this be true we do not see what right the appellee Goodyear had to maintain the cross-action. If he had transferred his interest in

the warranty to Grimm, the latter alone could maintain such cross-action in connection with Hensel. A cross-complaint, like a complaint, must be good as to all the complainants or it will be good as to none. We think the assignment that the cross-complaint states no cause of action must prevail. This conclusion must lead to a reversal of the judgment on the cross-complaint.

If Grimm succeeded to the rights of Goodyear in the warranty, as alleged, then Goodyear could have had no rights upon which he could base a cross-action for a breach of the warranty. We can not say that no harm could result to appellant from this cause. Grimm, not being a party to the cross-action, would not be barred by the judgment, from maintaining another suit upon the warranty. Appellees' counsel inform us that another cross-complaint was first filed in the cause in which Grimm was one of the cross-complainants, and that the court sustained a demurrer to the same. If this fact were made to appear by the record, we should be disposed to treat the error under consideration as harmless, as in that event the appellant would be fully protected by the judgment. Unfortunately, however, the record before us nowhere shows that Grimm was at any time a party to the cross-action, and, as it must be taken to import absolute verity, we must presume that he was not such a party, and is, therefore, not concluded by the judgment on the cross-complaint. This being so, the insufficiency of the cross-complaint will necessarily work a reversal of the judgment thereon.

The jury returned answers to interrogatories, and upon these the appellant moved for a judgment *non obstante*. The overruling of this motion is assigned as error.

The answers to the interrogatories do not show, as insisted by appellant's counsel, that Grimm was in possession of such knowledge as to the defects in the machin-

ery that he is estopped from defending against the note. They do disclose the fact, however, that Goodyear had transferred his interest to Grimm, and that the latter had succeeded to the rights of Goodyear in the warranty. In other words, the answers to the interrogatories, while they might entitle the appellant to a reversal of the judgment upon the cross-complaint are not such as to require a reversal of the judgment on the complaint.

Error is also assigned upon the ruling of the court in overruling the appellant's motion for a new trial. Among the reasons assigned for a new trial, and discussed by counsel, is that of excessive damages.

In view of the conclusion that the judgment on the cross-complaint must be reversed, it would not ordinarily be necessary to pass upon the question of excessive damages; but, as the measure of damages may become important upon another trial, we have deemed it best to determine the point made.

The amount of the jury's finding on the counter-claim was $270. This was the exact sum represented by the two notes not in suit, one of which had been paid, and for the other of which the appellees were still liable to the party to whom it had been assigned. Upon the note in suit, the finding was for the appellees. We see nothing in the amount of this verdict, of which the appellant would have a right to complain. If an error was committed in the quantum of damages, it was in not allowing interest on the $270, but this was an error in favor of appellant and not against it.

Another cause assigned in the motion for a new trial is, that the evidence was insufficient to sustain the verdict. It is urged in connection with this assignment, that there was a lack of proof upon the subject of written notice as required by the written warranty. We think the evidence strongly tends to show that the written con-

tract was modified by the parol agreement of the parties, and that the oral warranty required no such notice as that provided for in the written warranty. We also think the evidence tends to prove that if any notice was necessary it was waived by the conduct of the appellant in its repeated promises to remedy the defects, and its repeated insistence upon appellees' keeping the machine with the concurrent agreement that it should be made to do good and satisfactory work.

Appellant's counsel, still relying on the terms of the original warranty only, insist that by virtue of the stipulation therein contained any action for damages for a breach of the warranty, or any right to the recoupment of damages growing out of such breach, should be barred after the expiration of the year within which the sale was made. It is sufficient to say upon this subject, that if the contract was an enforceable one in this particular, the evidence tends to show that the modified parol warranty, subsequently made, did not contain this provision. The contention that the modified parol agreement is void for the want of a new consideration can not prevail. The evidence sustains the theory that the machine had not been accepted by the appellees, and the notes had not been delivered, when the new agreement was entered into between the purchasers of the machine and the appellant, or its agents. Under these circumstances, no new consideration was required to make the parol warranty a binding one.

Appellant's counsel also suggest that the evidence shows that appellees threshed a large quantity of grain with the separator, and that the jury should have considered this benefit that inured to the appellees from the use of the machine. There is, however, some evidence which tends to show that the benefits received from the

use of the machine were not in excess of the expenses laid out in operating the same.

We are of the opinion that the evidence fairly tends to sustain the verdict upon all material points.

The appellant also insists that the court erred in refusing to give certain instructions requested by it, and has assigned such refusal as a cause for a new trial. The first instruction requested and refused required the court to charge the jury that the appellees, Laudeman & Vollmer, would be personally liable on the note in suit, in the event they had failed to discharge certain duties enjoined upon them under their contract of agency with the appellant, in connection with the sale of the machine. It is a sufficient answer to this contention to say, that these appellees could be held liable in this action only upon the case made against them in the complaint. The theory of the complaint is that they were joint makers of the note, or at most only sureties upon the same. Their liability did not rest upon any separate contract of agency with the appellant. The reply in which an attempt is made to establish such a liability was a clear departure and should have been stricken out by the court. The instruction was properly refused.

The ruling of the court in refusing to give instruction No. 2, requested by the appellant, is not discussed and therefore requires no further notice on our part.

The refusal to give instruction No. 3, requested by appellant, is relied upon as error. This instruction assumes that the only warranty it is proper for the jury to consider is the written one filed with the pleadings, and charges the jury that appellees were estopped to claim damages by way of counterclaim, because of the stipulation contained in such written warranty that all liability upon the same ceased with the expiration of the year within which the sale was made. Without deciding as

to the validity of such a clause, it is sufficient to say that the language of this proposed instruction completely ignores the parol warranty relied upon by the appellees, and of which at least some testimony had been given upon the trial.    We think the instruction, if it had been given as requested, would have been fatally erroneous as to the appellees' theory of the case, and was properly refused.

The fourth instruction requested and refused proceeds upon the theory that Grimm would be liable on the note in any event, inasmuch as he knew, or with reasonable care might have known, before he took the place of Goodyear as payor of the notes, that the machine was defective, and that he can not therefore reap the benefits of the warranty.    Whatever may be the rights and liabilities of Grimm, there was no evidence that he assumed any obligations beyond the scope of those resting upon the original purchasers.    Moreover, there was at least some evidence tending to prove that appellant made promises to place the machine in good order after Grimm had purchased Goodyear's interest, and that such promises were not fulfilled.    This evidence the instruction ignores.    It was rightly refused.

In the fifth instruction asked for and refused, the jury were to be charged that the warranty given to Hensel and Goodyear was not transferable to Grimm, and in no way affected his liability on the note, neither could he be benefited thereby.

In view of what we have already said, we need not enter into an extended discussion of the correctness of this instruction.    No error was committed in refusing it.

Error is predicated in "giving instructions Nos. 6, 8, 10, 11, 12 and 13, given by the court of its own motion, and in giving to the jury, over plaintiff's objections and exceptions, instructions Nos. 1, 2, 3, 6, 7, 10, 11, 12 and

16, and each of them, asked by defendants, and which instructions given by the court of its own motion, and those asked by the defendants, are in the following words and figures, to wit:'' Then follow the instructions complained of.

The appellant's counsel, in their discussion of these instructions, do not insist that all of them were erroneous, either those given by the court of its own motion or those given upon request of appellees, when taken as a whole. It is a question of serious doubt, in our judgment, whether, with the implied admission of counsel that at least some of these instructions state the law correctly, the cause assigned properly presents any question as to the correctness of any instruction therein mentioned, when considered separately.

We have, however, examined such of the instructions as are assailed by counsel, and considered the questions argued in the brief of appellant's counsel, as if they had been properly presented. Without further prolonging this already too extended opinion, by setting out the instructions complained of, and noticing the alleged defects pointed out by counsel, it will be sufficient to say that the instructions, when considered in connection with the evidence in the case, present the law as fairly as the appellant was entitled to have it stated, and that no available error was committed in the giving of any of them.

It is proper to state further in connection with the questions attempted to be presented upon these instructions, that nearly, if not quite, all of such questions have been fully determined against the appellant by what has already been said in this opinion.

The admission of certain testimony over appellant's objection and exception is assigned as a cause for a new trial.

Appellees' counsel were permitted to prove by Mr. Hensel, while on the stand, that he first learned that the note in suit, and the other notes given for the separator, had been transferred, in 1892.

We do not see how this testimony could have injured the appellant. Evidence had already been introduced without objection, so far as disclosed in the brief of appellant's counsel, that such notes had been assigned by appellant to a bank before maturity, and that the note in suit had been transferred back to appellant before suit. Just how the appellant could have been prejudiced by the testimony of Hensel showing that he first learned of these transfers in 1892, we are unable to see. If there was any error committed in respect to admitting proof of the transfer, it was committed before the objection now under consideration was made. We think, however, that it was proper to show that the notes had been assigned to an innocent holder who still held at least one of them; for if the notes, or any of them, were so placed that appellees would be precluded from setting up the warranty against them when declared upon by the holder, then the amount for which appellees would be liable to such holder might constitute an item of damage under the facts set up in the cross-complaint.

The appellant's counsel, in their brief, call attention to further alleged erroneous rulings in the admission of testimony, but fail to point out the pages and lines of the record in which the rulings are assigned as causes in the motion for a new trial.

In view of the fact that we have already extended this opinion beyond its proper limits, and have noticed many questions presented by counsel which seem to us to be void of substantial merit, we can not stop to search the voluminous record for the purpose of verifying appellant's assignments.

Other causes are specified in the motion for a new trial, but they are not of sufficient importance to require special consideration.

We have not been able to discover any available error as to the judgment on the complaint. The cross-errors assigned are not such as to obviate the necessity of a reversal on the cross-complaint, and we need not, therefore, consider them.

The judgment on the complaint, answers and replies thereon, is affirmed, and the judgment on the cross-complaint and issues thereon joined, is reversed, with directions to the court below to grant leave to the appellees to amend said cross-complaint, and to permit the parties to reform the issues upon the cross-complaint, and for further proceedings on said cross-action not inconsistent with this opinion, and it is further ordered that the appellant pay one-half the costs of this appeal and the appellees Hensel and Goodyear the remainder of such costs.

