THE CITY NATIONAL BANK OF COLUMBUS, OHIO, Appellee, v. H. A. JORDAN AND OTHERS, Appellants.

**Sales:** FALSE REPRESENTATIONS: EVIDENCE OF MOTIVE OR INTENT.
1   Where the motive, intent or reason operating to induce a party's action are material considerations in determining the legal rights of a party, it is competent for such party to testify thereto; and the fact that the evidence is in the nature of a conclusion or relates to an ultimate fact upon which the jury must pass, is not objectionable. Under this rule it was competent for the purchaser of a horse, in an action upon a note

given therefor, to state that he was induced to make the purchase by certain alleged false representations of the seller.

**Bills and notes:** DEFENSES: FRAUD. The allegations that a horse was purchased for breeding purposes under false representations as to his record and quality, and that he had proven worthless for that purpose, constitutes a good defense to a note given for the purchase price, except as against an innocent holder of the paper.

**Evidence of value:** COMPETENCY OF WITNESS. The rule as to the competency of a witness on the question of value should be liberally construed; and where it was shown that the purchasers of a horse for breeding purposes had not only for some time been in possession of the animal and tested and observed his capacity, but also that they were farmers and had for years been engaged in raising and handling horses, their competency on the question of its value was sufficiently established.

**Parol evidence:** CONCLUSION: VARIANCE OF WRITING. The identification of a letter as part of certain correspondence, and the pointing out or identification of its subject matter by parol, violates neither the rule excluding the witness' conclusion, nor that which excludes parol testimony which tends to vary the terms of a writing.

**Letters:** ADMISSIBILITY. Letters received by a party to a suit in due course of mail purporting to have been addressed to him by the other party, which are relevant to the controversy and in response to letters written by the first party, are receivable in evidence without further proof of authorship.

**Sales:** FALSE REPRESENTATIONS: RESCISSION. The representation in the sale of a stallion that he had been recently imported and had never been used for breeding purposes in this country was of a material character, and if false was sufficient to justify a rescission upon discovery of the fraud.

**Same.** The representation of a certificate written in a foreign language, which the purchasers were unable to read, as containing a record of the horse as a foal getter was material, as bearing upon the value of the horse, and if false was well calculated to mislead the purchasers.

**Same:** BILLS AND NOTES: DEFENSE OF FRAUD: TO WHOM AVAILABLE. False representations operating to induce the purchase of a stallion, though not made directly to each and every individual purchaser, are ground for rescission of the purchase; and proof of such rescission is a good defense in favor of all the makers of a note given for the price as against a holder charged with notice of the fraud, though pleaded by only one of the makers.

**Bills and notes:** *Bona fide* HOLDER: BURDEN OF PROOF. Where a note was tainted with fraud in its inception the burden is upon the purchaser to show that he took the same in good faith and without notice; and where there is evidence of its fraudulent character the question of good faith ownership is for the jury.

*Appeal from Palo Alto District Court.*— HON. D. F. COYLE, Judge.

TUESDAY, SEPTEMBER 29, 1908.

ACTION at law upon a promissory note. There was a directed verdict and judgment for plaintiff, and defendants appeal.— *Reversed.*

*J. A. Henderson* and *B. E. Kelly,* for appellants.

*E. A. Morling,* for appellee.

WEAVER, J.— The petition is based upon a promissory note made August 24, 1903, for the sum of $1,000 and interest, payable July 1, 1905, to the order of McLaughlin Bros., by whom it is alleged to have been indorsed and transferred to the plaintiff before due and without notice of any defense thereto. The answer of the defendants is not very clearly stated, but we may deduce therefrom the following defenses: The first of these is based upon an alleged rescission of the contract of purchase because of false representations made by the payees or their selling agent concerning the horse, its breeding, and record. It is further alleged that the horse was purchased for breeding purposes; that the vendors represented and guaranteed him to be capable of getting with foal sixty per cent. of the producing mares served by him, but that he proved to be substantially unfit and worthless for such uses, thereby rendering the note void for failure of consideration. After the conclusion of the evidence, and pending plaintiff's motion to direct a verdict in its favor, the defendants tendered, but were denied permission to file, an

amendment to their answer, alleging an oral warranty and representation by the selling agent that the horse was a foal getter in sixty per cent. of its services, and that said warranty and representations were falsely made by the vendors with knowledge of their falsity; that defendants believed and relied thereon in making the purchase; and that, on discovering the deception practiced upon them, they tendered a return of the horse to said vendors, and demanded a surrender of the note in suit.

The motion to direct a verdict for plaintiff was based upon ten different propositions. Stated in condensed form, the points made by the motion were that the evidence introduced had no tendency to sustain any of the defenses pleaded; that the alleged false representations were of an immaterial character; that said representations do not appear to have been made to all of the makers of the note, and were therefore insufficient to constitute a defense in favor of any of them; that the good faith of the purchaser of the note had been conclusively shown; and that the alleged rescission of the purchase was not made in due time. The motion was sustained generally, and judgment entered against the defendants jointly for the full amount of the note. Very many exceptions have been preserved by the appellants to the rulings of the trial court, but we shall take the time to mention those only which we deem decisive of the appeal.

I. One of the defendants, having testified that the selling agent represented the horse to have been imported from France in the preceding May or June, and at the same time

1. SALES: false representations: evidence of motive or intent.

produced for the purchasers' inspection a paper or certificate in the French language which he claimed to show a breeding record of eighty-two per cent. for said animal, was then asked by his counsel whether he entered into the contract of purchase by reason of the representations so made by the agent. To this inquiry the defendant objected, as " calling for the conclusion of the witness upon one of the ultimate facts in issue

and incompetent and immaterial." The objection was sustained; the ruling being accompanied by the court's suggestion of a different method of presentation by which the desired matter might in its judgment be made admissible. The same witness having testified that the horse was worthless for breeding purposes, the answer was stricken out on motion of the plaintiff " as a conclusion of the witness, and without sufficient foundation, and because the inquiry as to value called not for facts, but for the witness's opinion." Similar rulings were made upon the offer of like testimony by other defendants. In each of the instances mentioned the objection should have been overruled. It is true in a certain sense that, in saying he entered into the purchase because of or in reliance upon the representations made to him by the seller, the defendant is testifying to a conclusion, and, perhaps, to one of the ultimate matters of fact involved in the controversy, but this is by no means conclusive of the inadmissibility of the evidence. Whenever motive or intent or the reasons operating to induce a given action by a party are material considerations in determining rights involved in any litigation, it is competent for such party to testify thereto; and the fact that such testimony may partake of the nature of an opinion or a conclusion, or may relate to some ultimate fact or facts upon which the jury must pass in reaching their verdict, works no exception to the rule. 3 Wigmore's Evidence, sections 1920, 1921; 1 Elliott's Evidence, section 581. Under the issues in the present case, it was competent for the defendants to show that the selling agent made the alleged representations concerning the horse; that such representations were false; and that they, relying thereon, were induced to make the purchase. Whether they did so believe and rely was a matter to which they alone could give direct testimony, and they were entitled to have their sworn statement in that respect go to the jury for whatever it might be deemed worth, when considered with all other facts and circumstances bearing upon that question.

*Hulett v. Hulett,* 37 Vt. 586; *McKown v. Hunter,* 30 N. Y. 625; *Bass v. United States,* 20 App. D. C. 232; *Shockey v. Mills,* 71 Ind. 288 (36 Am. Rep. 196); *Watson v. Cheshire,* 18 Iowa, 202; *Browne v. Hickie,* 68 Iowa, 330; *Zimmerman v. Brenon,* 103 Iowa, 144; *Safford v. Grout,* 120 Mass. 20; *Watkins v. Wallace,* 19 Mich. 57; *Yerkes v. Railroad Co.,* 112 Wis. 184 (88 N. W. 33, 88 Am. St. Rep. 961). Directly in point with the case before us are *Parrish v. Thurston,* 87 Ind. 440; *Grever v. Taylor,* 53 Ohio St. 621 (42 N. E. 829); *Weaver v. Cone,* 174 Pa. 104 (34 Atl. 551); *Hard v. Ashley,* 117 N. Y. 617 (23 N. E. 177). In all these cases evidence such as was excluded by the trial court in this case as to the reasons influencing the defendant's actions is held admissible.

Nor can we find any valid ground upon which to sustain the order striking out the witness's testimony as to the alleged worthless character of the horse. It is true that no **2. BILLS AND** counterclaim for damages for breach of war-**NOTES: defenses: fraud.** ranty was pleaded, but there was a plea that the horse was sold to defendants as a breeder and for breeding purposes under false representations as to his breeding record and quality, and that he proved to be substantially worthless; thus causing an entire failure of consideration for which the note had been given. That this constitutes a good defense except, as against innocent holders of the paper, see *Parsons v. Mallinger,* 122 Iowa, 703.

To uphold the further objection made by counsel, that the witness's answer was a mere matter of conclusion, would be to establish a rule excluding all evidence of value. Mar-**3. EVIDENCE OF** ket value is not the subject of mathematical **VALUE: competency of witness.** or exact measurement or statement, and can be proved only as a matter of opinion or judgment by competent witnesses. The rule as to competency of witnesses on questions of value is not very narrow, and is always liberally construed. *Clark v. Ellsworth,* 104 Iowa, 449; *Jeffries v. Snyder,* 110 Iowa, 359.

The ownership and possession of personalty afford some ground for the presumption of capacity to speak as to its value. In the present instance, in addition to the fact that the witnesses were the purchasers of the horse, and had had it in their possession for a long time and tested and observed its capacity, it was further shown that they were farmers, and had for years raised and handled horses, and these facts we are satisfied were sufficient to make their testimony admissible. In addition to the cases already cited, see *Shea v. Hudson*, 165 Miss. 43 (42 N. E. 114); *Tubbs v. Insurance Co.*, 131 Iowa, 217.

It having been shown that, after discovering the alleged falsity of the representations made by the selling agent, defendants sent a letter or written notice to the payees of the note, informing them of their election to rescind the purchase, and offering to return the horse to them at any place they might designate in the State of Iowa, one of the defendants upon the witness stand produced a letter dated August 8, 1904, purporting to be addressed to him by the said McLaughlin Bros. with reference to the complaints which had been made concerning the breeding qualities of the horse, and proposing its exchange for another. This letter the defendant sought to have identified by the witness and introduced in evidence as set forth in the following excerpt from the record of the testimony of said witness (Exhibit 8 therein mentioned being the communication from defendants to McLaughlin Bros. and Exhibit 9 the alleged reply thereto): " Q. Examine defendant's ' Exhibit 9,' and state whether or not that is the written acknowledgment you received in answer to that notice. A. Yes, sir. Q. Did you on the 28th of July — Mr. Morling: We object to that part of the testimony which says that is an answer to the notice as being a conclusion of the witness. (Objection sustained. Defendants except.) Witness: I did not on the 28th of July, 1904, address any other letter to the Columbus office of Mc-

*(margin note:* 4. Parol evidence: conclusion: variance of writing.*)*

Laughlin Bros. aside from this 'Exhibit 8.' Q. You may state to the jury what is referred to in this letter, marked 'Exhibit 9,' in the introductory portion which says: 'Your letter of the 28th ult., addressed to our Columbus office is received.' You may state to what that refers. Mr. Morling: We object to that as calling for the witness' conclusion. (Objection sustained. Defendants except.) Witness: I got this letter marked, 'Exhibit 9,' out of the mail box in the regular course of mail at Scranton, Iowa, free delivery. Q. State whether or not that was in reply to this statement of the 28th of July. Mr. Morling: Objected to as calling for conclusion of the witness. (Objection sustained. Defendants except.) Mr. Henderson: We now offer in evidence 'Exhibit 9.' We now offer in evidence 'Exhibit 8.' Mr. Morling: Objected to as incompetent, irrelevant, and immaterial, and not a sufficient foundation, and not the best evidence. (Sustained on the last ground.)" The objections should have been overruled, and the letter admitted in evidence. The identification of the letter as part of a certain correspondence and the pointing out or identification of its subject-matter by parol violates neither the rule which excludes the witness's conclusion nor the rule which excludes parol testimony to vary the terms of a writing.

Moreover, it is the established rule in this State, as it is in most jurisdictions, that letters received by a party to the suit through the mails purporting to have been addressed to him by the other party with reference to matters relevant to the controversy, and in response to letters written by said first party, are admissible in evidence without further proof of their authorship. *Davis v. Robinson,* 67 Iowa, 363; *Lyon v. Assurance Co.,* 46 Iowa, 631; *Bullis v. Easton,* 96 Iowa, 513; *Boykin v. State,* 40 Fla. 484 (24 South. 141); *Connecticut v. Bradish,* 14 Mass. 296; *Bank v. Geisthardt,* 55 Neb. 232 (75 N. W. 582); *Armstrong v. Advance,* 5 S. D. 12 (57 N. W. 1131); *Scofield v. Parlin,* 61 Fed. 804 (10 C. C. A. 83). There

5. LETTERS: admissibility.

was error, therefore, in excluding the offered testimony. Other rulings on evidence are complained of; but, while we think some of the objections are sound, the same questions will not necessarily arise on a retrial, and their discussion would unduly prolong this opinion.

II. ' Neither can the order directing a verdict for plaintiff be sustained on the further proposition advanced by counsel, that the alleged representations were of an immaterial character. In the first place, the plea of false representations were not assailed by motion or demurrer, but issue was taken thereon, and the cause tried in the court below on the theory that the issue so voluntarily joined presented something for trial. Some of our cases seem to hold that failure to assail the sufficiency of such pleading in the trial court is such a waiver of the objection notwithstanding our statute that it cannot be made available in this court. *Ormsby v. Graham,* 123 Iowa, 211, and cases there cited. But, whether this rule be sound or unsound, we are satisfied that the alleged representations that the horse had but recently been imported from France and had never been

6. SALES: false representations: recission.

used for breeding purposes in this country was of a material character; and, if, as claimed by defendants, such representation was false, and at the date thereof the horse had been a long time in this country, had been previously sold by the vendors and returned to them by the purchasers because of its lack of breeding capacity, it was sufficient to justify a rescission of the purchase upon the discovery by the defendants of the fraud so perpetrated.

Moreover, the alleged representation that the certificate written in French which the purchasers were unable to translate or read for themselves contained the record of the

7. SAME.

horse with respect to his foal-getting capacity had a material bearing upon its value for the purposes for which it was being purchased, and, if false, was well calculated to mislead persons of ordinary prudence.

III. Relying upon the rule applied in *Morton v.*

*Morton,* 10 Iowa, 58, that, if a defense jointly pleaded by several defendants is insufficient as to one of them, it is in-

8. SAME: bills and notes: defense of fraud: to whom available.

sufficient as to all, the appellee contends that the failure of defendants to prove that the alleged false representations were made to each individual leaves the defense based thereon without any support. This argument involves a misconception of the effect or at least the extent of the rule. The *Morton* case presents an instance in which one of the defendants being a married woman her codefendants, who were under no disability, sought to plead and obtain the benefits of her coverture. The decision there announced goes no further than to say that a defense which is personal to one defendant, like coverture or minority, or other lack of capacity to contract, is not available to his codefendants. With that conclusion we have now no quarrel. But, where the proffered defense goes to the merits of the case or to the substance of the contract sued upon, it may be pleaded by all of the defendants, or, if pleaded by one of them, it inures to the benefit of all. This distinction was expressly recognized in the case of *Morrison v. Stoner,* 7 Iowa, 493. See, also, *Hall v. Rochester,* 3 Cow. (N. Y.) 374; *Morton v. Crogham,* 20 Johns. (N. Y.) 122; *Blodget v. Morris,* 14 N. Y. 491; *Harrison v. Wallton,* 95 Va. 721 (30 S. E. 372, 41 L. R. A. 703, 64 Am. St. Rep. 830); *Miller v. Longacre,* 26 Ohio St. 291; *Campbell v. McHarg,* 9 Iowa, 354. In *Hall v. Rochester, supra,* a case cited approvingly by this court in *Morrison v. Stoner,* the action was upon a promissory note, and the defense advanced by one defendant that the note had been procured by fraud was held to inure to the benefit of all of the makers, including those who had suffered default to be taken against them.

It is argued, however, if we understand counsel correctly, that the defendants were not joint purchasers of the horse, but separate and independent purchasers of distinct shares therein, and that in such case a good defense as to

one purchaser may not be good as to others.    The evidence as to the scheme or plan of the purchase is not very clear, but it is certain that the note is a joint contract, on which all are liable either as principal makers or as sureties for their co-makers, and, if such be the case, a defense which goes to the plaintiff's right of recovery in whole or in part may be shown whether the plea be made jointly or severally.    *Morrison v. Stoner, supra.*    It is a general rule that the liability of a surety is not greater than that of his principal.    And he may have the benefit of any defense which the principal pleads or could plead, subject, of course, to the limitation recognized in the class of cases of which *Morton v. Morton, supra,* is a type.    *Henline v. Reese,* 54 Ohio St. 599 (44 N. E. 269, 56 Am. St. Rep. 736); *Eising v. Andrews,* 66 Conn. 58 (33 Atl. 585, 50 Am. St. Rep. 75).    Applying this rule in an action upon a promissory note, it has been held that the surety may show failure of consideration for the note, and may show that the note was tainted with fraud in its inception, and that the sale for which it was given has been rescinded.    *Stockton v. Giddings,* 96 Cal. 84 (30 Pac. 1016, 21 L. R. A. 406, 31 Am. St. Rep. 181).    "Fraud and deceit in inducing the principal to make his promise will release the surety, as these affect the character of the debt."    *Winn v. Sanford,* 145 Mass. 302 (14 N. E. 119, 1 Am. St. Rep. 461); *Ohio T. E. Co. v. Hensel,* 9 Ind. App. 328 (36 N. E. 716).    We do not, however, concede that the defendants were not joint purchasers of the horse.    They seem to have united in a somewhat informal association for the purpose of making the purchase.    The seller was not offering or proposing to sell any share or interest in the horse except on condition that enough purchasers were found to take the entire ownership.    When the required number was found, the entire title was transferred, and all the purchasers united in making the note; and, while as between themselves it was doubtless understood that each owned a share or fractional interest in the horse, such fact is not in-

consistent with the theory of joint purchase. The technical legal effect of the transaction, whether it served to make the defendants joint purchasers, or partners, or principals as to their several fractional shares of the price and sureties as to the remainder, is in our judgment a question unnecessary to decide. In either case we think that false representations operating to induce the purchase, though not made directly to each and every individual purchaser, would afford good ground for a rescission of the purchase, and that proof of such rescission would constitute a good defense to an action on the note in the hands of any person charged with notice of the fraud.

IV. It is finally insisted that the good-faith character of plaintiff's ownership of the note is to be conclusively presumed, or that it was so clearly established by the evidence that the court could not do otherwise than direct a verdict against the appellants. We feel constrained to hold that it was a question for the jury. As we have already said, there was evidence for the jury upon the question whether the note was procured by false representations. If this question should be determined in the affirmative (and there was evidence from which the jury could so find), then the instrument was tainted with fraud in its inception, and the presumption of good faith which ordinarily attaches to the purchase of negotiable paper before due no longer obtains, and the burden would in such case be upon the plaintiff to show that it received the paper in due course and without notice of the defense. See *Mc-Night v. Parsons,* 136 Iowa, 390, and cases there cited. On the record before us we are not prepared to say that the showing is sufficiently conclusive to require us to hold that the appellee's good-faith ownership of the note has been established as a matter of law.

9. BILLS AND NOTES: *bona fide* holder: burden of proof.

It follows from the foregoing that a verdict should not have been directed, and a new trial must, therefore, be ordered.

The judgment appealed from is *reversed.*