COMPANY A, FIRST REGIMENT, NORTH DAKOTA NATIONAL GUARD TRAINING SCHOOL, a Corporation, Respendent, v. EDMUND A. HUGHES, Appellant.

(193 N. W. 144.)

**Trover and conversion — evidence held to show conversion.**

1. In an action for the conversion of personal property, the evidence is examined, and it is *held* sufficient to support a finding of conversion.

**Evidence — members and directors of corporations not necessarily qualified to testify as to value of property of corporation alleged converted.**

2. Witnesses who were members and directors of a corporation are not, by virtue of that fact alone, qualified to testify to the value of property of the corporation which is alleged to have been converted.

Opinion filed December 30, 1922. Rehearing denied April 3, 1923.

Evidence, 22 C. J. § 786 p. 695 n. 44; Trover and Conversion, 38 Cyc. p. 2086 n. 25.

Note.—On evidence of an act of ownership or control exercised over plaintiff's property as sufficient proof of a conversion, see 26 R. C. L. 1110; 4 R. C. L. Supp. 1698; 5 R. C. L. Supp. 1440.

Appeal from the District Court of Burleigh County, *Coffey,* J.
Judgment reversed and the cause remanded for a new trial.

*Newton, Dullam & Young,* for appellant.

To constitute conversion there must be a positive tortious act, a tortious detention of personal property from the owner, or its destruction, or an exclusion or defiance of the owner's right, or the withholding of possession under a claim of title inconsistent with that of the owner. 8 Wait, Act. & Def. 1194; Bolling v. Kirby, 90 Ala. 215, 24 Am. St. Rep. 789, 7 So. 914; Terry v. Binghamton Nat. Bank, 30 Am. St. Rep. 87 and note; 2 Kinkead, Torts, § 582; Tinker v. Morrill, 39 Vt. 477, 94 Am. Dec. 345; Magnin v. Dinsmore, 70 N. Y. 417, 26 Am. Rep. 608; Taugher v. N. P. R. Co. 21 N. D. 111, 129 N. W. 747, 750.

"Trover will lie only where the defendant is guilty of a conversion, which implies a wrongful disposition, appropriation, wasting, destruction, or withholding of the property. The essential element of a conversion is malfeasance." Central R. & Bkg. Co. v. Lampley, 76 Ala. 357, 52 Am. St. Rep. 334.

"A mere wrongful transportation of a chattel does not amount to a conversion, unless the taking or detention of the chattel is with intent to convert it to the taker's own use, or that of some third person, or unless the act done has the effect of destroying or changing the quality of the chattel." Rogers v. Huie, 2 Cal. 571, 56 Am. Dec. 363; Evans v. Mason, 64 N. H. 58, 5 Atl. 766; Salt Springs Nat. Bk. v. Wheeler, 48 N. Y. 792, 7 Am. Rep. 564-566.

"The mere not doing of an act is not a conversion." McCrombie v. Davies, 6 East, 538.

"A conversion implies a wrongful act, a misdelivery, a wrongful disposition, or withholding of the property. A mere nondelivery will not constitute a conversion, nor will a refusal to deliver on demand if the goods have been lost through negligence or have been stolen." Hawkins v. Hoffman, 41 Am. Dec. 767; Nutt v. Wheeler, 30 Vt. 436, 73 Am. Dec. 316.

*F. O. Hellstrom* and *Theodore Koffel,* for respondent.

"A demand and a refusal is not always necessary, however where the defendant came lawfully into possession it may be dispensed with, when the wrongful assumption of property in or the right of disposing of

the goods is shown." 23 R. C. L. 888, 1098; Olson v. Merrill, 20 Wis. 462, 91 Am. Dec. 428; 24 L.R.A.(N.S.) 226.

"One who exercises dominion over property in exclusion and defiance of plaintiff's rights has converted the property." Nicholas & S. Co. v. Minnesota Threshing Mach. Co. 73 N. W. 415; Town v. St. Anthony Dakota Elevator Co. 77 N. W. 608; Elstad v. Western Elevator Co. 69 N. W. 44; Sanford v. Bell, 48 N. W. 434; Rosson v. Hodges, 47 N. W. 140; Consolidated Land Co. v. Hawley, 63 N. W. 904.

"It is well established that the owner of personal property may himself testify as to its value without any other foundation being made except as to his ownership and control thereof. He need not qualify as an expert on values. So, too, second-hand goods of the nature described can hardly be said to have a market value and the rule as to such only requires a strict limitation as to the market value in cases where such values would be the fairest and the best measures of damages and is ascertainable. What the law requires is certainty as far as possible and an absence of speculation. It does not however require the impossible or the unreasonable." Seckerson v. Sinclair, 24 N. D. 625, 140 N. W. 239.

"The authorities are ample that the owner may testify without other qualifications." Tubs v. Garrison, 23 N. W. 921; City Nat. Bank v. Jordan, 117 N. W. 759; Hutchinson v. Poyer, 44 N. W. 327; Erickson v. Drazkowski, 54 N. W. 283; Michaud v. Grace Harbor Lumber Co. 81 N. W. 93; Bailey v. Walton, 24 S. D. 118, 123 N. W. 701; Enos v. St. Paul F. & M. Ins. Co. 4 S. D. 639, 57 N. W. 919; Pollock v. Jordan, 22 N. D. 132, 132 N. W. 1000; Goldstein v. Northern P. R. Co. 37 N. D. 602, L.R.A.1918A, 612, 164 N. W. 143; Missouri P. R. Co. v. Sherwood Thompson & Co. 17 L.R.A. 643.

BIRDZELL, Ch. J. This is an appeal from a judgment for the plaintiff in an action for conversion. The case was tried in the district court of Burleigh county, before a jury, and resulted in a verdict of $6,000, plus interest from October 1, 1917, at 6 per cent. Upon this verdict judgment was entered.

The plaintiff is a civil corporation, organized in 1906 under the laws of this state, § 1425a, Rev. Codes 1899, for the purpose, among others, of maintaining an armory for Company A, First Regiment, North

Dakota National Guard, as a training school. The articles provide that the corporation shall be managed by a board of directors of five members, one of whom shall be the captain of Company A, who shall be ex officio president of the board, all being members of the company in good standing, who shall hold office for a term of one year, and until their successors are elected and qualified under such by-laws and rules as may be adopted by the members of the corporation.

In March, 1917, Company A was called into Federal service as a part of the Second Battalion of the North Dakota National Guard, and assigned to guard duty at Camp Frazier, near the Missouri river railroad bridge at Bismarck. July 1st, 1917, this battalion was relieved of guard duty and mobilized at Fort Lincoln, near Bismarck, Company A being under the command of Captain J. W. Murphy. Soon thereafter, the Second Regiment of North Dakota National Guards was organized, Company I and the Headquarters Company of this Regiment being recruited in Bismarck, and placed under the command of Captains A. B. Welch and H. T. Murphy, respectively. It seems that the First Regiment entrained for Camp Greene, North Carolina, on September 29, 1917, and the Second Regiment, October 1, 1917. Shortly prior to the departure of the First Regiment, according to his contention herein, the defendant had purchased some of the property belonging to the plaintiff, through negotiations with Captain John W. Murphy, and by an instrument, or letter, dated September 29, 1917, it is contended that authority was conferred upon the defendant to take full charge of the armory building on October 1st, on behalf of plaintiff corporation, until the captain or his successor should return to Bismarck. On or about August 5, 1918, Captain J. W. Murphy returned to Bismarck, where he died sometime later. According to the defendant's contention he turned back to Captain Murphy, upon the latter's return, the property which he had not purchased.

It appears, however, that prior to the departure of Company A, and at about the time the defendant obtained custody of the plaintiff's building and contents, the armory contained the following equipment (the numbers of some of the articles being indefinite): Steel lockers, steam boiler, a large number of pairs of roller skates, a large number of chairs, a roll top desk, a piano, punching bag and rack, horizontal bar, basket ball frames, ladies' dresser, a rug, two rocking chairs, hot water

heater, supply tank, cooking ranges, wall mirrors, gymnasium horse, office table, kitchen chairs, and kitchen table; and that upon the return of the company from military service, all, or practically all, of this material was gone. Hence this action.

It is first argued that the court erred in not directing a verdict for the defendant, on the ground that there was no substantial evidence on which a jury could find that the defendant had converted the plaintiff's property, in that there was not shown to have been any evidence of a tortious taking or any intent to convert the property; that the testimony, when construed most strongly against the defendant, shows no more than negligence in the care of the property,—negligence in the sense of nonfeasance, rather than misfeasance; that there was no demand for the property, and no unlawful detention. We are of the opinion that no error was committed in the denial of the defendant's motion for a directed verdict. There is affirmative evidence in the record to the effect that the defendant, in order to regain possession of the building from one O'Connor, to whom he had leased it, paid him a bonus in cash, and authorized him to take from the building about seventy chairs and a piano. The defendant disputed this, but he testified that he made a deal with Captain J. W. Murphy, whereby he purchased the lockers for the Beulah Coal Mining Company, supposing there were a hundred of them, for $180, but that there were only, in fact, some forty-seven or forty-eight lockers; that the men who took the lockers for the mining company said that they wanted the water tank also, and he, the defendant, told them to go ahead and take it, but that he hadn't seen Murphy about the tank prior to that time. If it be assumed, therefore, though we do not so decide, that Captain J. W. Murphy had authority to dispose of plaintiff's personal property, obviously, this authority was not, under the evidence in this case, exercised further than to dispose of the lockers to the defendant. As the defendant himself has testified to the unauthorized taking of the water tank, and as other witnesses for the plaintiff have testified to the taking and disposal of other property under the defendant's direction, the evidence is clearly sufficient, in our opinion, to support a finding of conversion. In as much as the same evidence goes to establish an original tortious taking, it is not essential, under well settled legal principles, to make or prove a demand for a return.

Error is assigned upon rulings of the trial court, denying motions to strike out the testimony of the witnesses Captain Welch and Langley upon the question of value. It is shown in support of these assignments that the verdict of the jury, covering as it does practically the entire amount claimed by the plaintiff, must necessarily have been based upon the testimony of these witnesses as to the value of the items covered by their testimony. Captain Welch testified, among other things, that the lockers were worth $20 each, the roller skates, $6 a pair, the punching bag and frame, $50, the rug, $65, the roll top desk, $75, etc. He had personally purchased some of the skates; they had all been used, some for one winter, and some for two; he thought that they had paid $6 a pair for the skates, and he testified that they were worth that much after one or two winter's wear; that as to the remaining items, he was estimating the value and that his estimates were not necessarily based upon knowledge of values. He disclaimed knowledge of the value of the boiler, for instance, but he nevertheless testified that it was worth $750. Again, on redirect examination, he stated that his values were based upon what he had paid "for these articles mostly," but in the record it appears that, aside from the roller skates, he had made few, if any, purchases for the company.

The testimony of the witness Langley as to value related principally to the piano. He stated that it was worth a thousand dollars; his knowledge of the value, according to his testimony, was gained from negotiations that he had had in Minneapolis, for the purchase of a new piano. Upon the record we think it clear that this witness was not shown to have been qualified to testify as to the value of the piano. Neither was the condition of the piano shown. In fact, one of the witnesses for the plaintiff, namely O'Connor, who took the piano from the armory, testified that it was worth $85, and that while it was supposed to be, or to have been, an electric player piano, the player part was gone. Whether it disappeared before or after the alleged conversion does not appear.

The respondent insists that the testimony of the witnesses Welch and Langley, as to value, comes properly within the rule that an owner may testify to the value of his property, but we do not consider the testimony offered here to come within this rule. These witnesses were not the owners; neither does it appear, with the exception noted as to the skates, that either of them had purchased, or had otherwise become

familiar with the value of the articles concerning which the testimony was given. Their interest was not any greater than that of any other member of the company, and if they might give testimony as to value on the sole ground of the interest they had as members of the company, or even as directors, then any stockholder or director of an ordinary business corporation would be competent to testify as to the value of any article of property owned by the corporation, even though he might never have acquired any knowledge whatsoever concerning it. We are clearly of the opinion that such is not the law, and that the ordinary rule of testimonial knowledge applies to these witnesses. The liberal rule that permits an owner to testify concerning the value of his property is based upon a presumed familiarity with the subject, acquired from having purchased it or from having gained a knowledge in some other way, sufficient to qualify him. 13 Enc. Ev. 560. There is no presumption that a stockholder or a director of a corporation acquires such knowledge concerning the value of all the property owned by the corporation.

For the error thus affecting a substantial part of the recovery, the judgment must be reversed and the cause remanded for a new trial.

It is so ordered.

ROBINSON and CHRISTIANSON, JJ., concur.

GRACE, J. (concurring in part and dissenting in part). I concur with the majority opinion in so far as it holds that the evidence is sufficient to show a conversion of the property in question by the defendant. I dissent from the majority opinion in so far as it holds that there is no substantial evidence in the record to support the verdict.

The property converted is located in the armory in Bismarck, North Dakota. It was only such property as was used for the convenience, use and entertainment of the members of the company. The members and officers of the company were familiar with it and were perhaps in just as good a position to know its value as the adult members of the household would be familiar with and know the value of the furniture of the home. Because the company had a corporate existence, would not prevent the officers or members or directors, in the circumstances here, from knowing the value of the property in the armory. The wit-

nesses who testified for plaintiff were competent to give evidence as to value. They did so. I think the plaintiff has adduced some substantial evidence of value of all the property converted, which is sufficient to support the verdict.

BRONSON, J. (dissenting). I am of the opinion that the judgment should be affirmed. I concur in the majority opinion to the extent that it holds the evidence sufficient to support the jury's findings of the conversion. I disagree with the majority opinion concerning the admissibility of competency of the testimony of the witnesses Captain Welch and Langley.

Many years ago, an armory building was established in Bismarck. Company "A" of the National Guard was quartered there. The personal property involved, located therein, was bought by, or furnished to, the company for its use. The company was the owner. Plaintiff, a civil corporation, was organized for purposes of holding this property. Its board of directors was composed of members of the company, one of them being the captain. With the exception of a few months the witness Welch was captain of the company from 1913 to April, 1917. During the time when preparations were being made for engaging in the world war he was assigned to Company "I." Captain Welch was president of the plaintiff corporation. He was president of it at the time of the trial. As company commander it was his duty to see that the personal property was conserved. As far as the government property was concerned he was directly charged with it. This property involved was not government property. The witness Welch had charge of this property. He was familiar with it. He testified that he knew the reasonable value of this property. Some of it he had bought, such as the roller skates. His knowledge of value was based upon what he had paid for these articles. He further had inquired recently as to the value thereof. He had made inventory of this property. He saw the property in September, 1917, when the company was entraining for the Front. On cross-examination he testified that the values he placed upon the property were his estimate; that concerning some of the articles that he did not know what their real value was; that he was giving merely his estimate.

The witness Langley has been a member of the board of directors

for the plaintiff since 1914. He is familiar with the property. He testified concerning its condition. He gave testimony concerning the value of an electric piano. He stated that in his estimation the value of this electric piano, at that time (referring to September, 1917) allowing for the scratches on it, was $1,000; he knew what it would cost to replace it. No objection was made to this testimony. On cross-examination he testified that he had dealt in second-hand instruments; that he had dealt in nearly everything; that he based his conclusion as to the value on what it would cost him to get one like it; that he also knew what it would cost to have the electric piano refinished; that he allowed about $150 for such purpose.

At the conclusion of Welch's testimony defendant moved to strike out certain portions thereof concerning value of certain property for the reason that witness testified that he did not know what its value was. A similar motion was made with reference to the witness Langley.

The testimony of other witnesses was introduced, both by plaintiff and defendant, concerning the condition of the property and its value.

Pursuant to all of this testimony, considering the highest values testified for the various items, the total amount aggregated over $7,100. The jury returned a verdict for $6,000.

It is apparent that the evidence of the witnesses Welch and Langley, which was received without objection, was competent for the purposes for which it was offered. Goldstein v. Northern P. R. Co. 37 N. D. 602, 609, L.R.A.1918A, 612, 164 N. W. 143. Generally an owner is permitted to testify concerning the value of property owned by him. 22 C. J. 581; 13 Enc. Ev. p. 560. The reason for such rule is that there exists a presumption of familiarity with that which is owned and a better means of knowing the quality and value than other persons. Fairmont Gas Engine & R. Motor Car Co. v. Crouch, 133 Minn. 167, 157 N. W. 1090. Wigmore, in his work on Evidence, § 716, vol. 1, states, concerning property values, viz.:

"Here the general test, that anyone familiar with the values in question may testify, is liberally applied, and with few attempts to lay down detailed minor tests. The owner of an article, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would

be trifling) may be left to the jury; and courts have usually made no objections to this policy."

See Goldstein v. Northern P. R. Co. supra; Needham v. H. S. Halverson & Co. 22 N. D. 594, 603, 135 N. W. 203. So, under this rule, a part owner may testify the same as a full owner, 13 Enc. Ev. 561. So may a former owner testify. Paterson v. Chicago, M. & St. P. R. Co. 95 Minn. 57, 103 N. W. 621. Thus, the competency of an owner is not affected by the fact that his knowledge is recently acquired and is based in part on the result of inquiries made of experts and others. 12 C. J. 582. It certainly appears from this record that the witnesses Welch and Langley fall within the reason of the rule permitting an owner to testify concerning the value of his property. There is no necessity of applying any presumption that a mere stockholder or director of a corporation may testify like an owner. Upon this record the witnesses, whose testimony is questioned, knew the property, were familiar with it, and had a custody and control thereover. Under the peculiar circumstances it may well be said that they were directly interested in this property. In fact they stood precisely in the position of one who would be the owner of such property. The reason for the rule applying, the rule should apply. It fairly well appears upon the record in this case that the plaintiff as a civil corporation simply existed for the purpose of holding a status in law as the owner of this property. It was not engaged in business. It was simply holding the title to the property for the benefit of the composite members of an organization that formed a military unit of our government. Hence, all of these facts should be considered in connection with the general principles of law that any witness, whether owner or not, sufficiently familiar with property to make his estimate serviceable may state his estimate of its value. 22 C. J. 573; Lines v. Alaska Commercial Co. 29 Wash. 133, 69 Pac. 642. For, ordinarily, value is simply a matter of opinion. In many cases, such as this case, the proof must rest on the opinion of witnesses. See 22 C. J. 574. In such cases the liberal rule of construction is applied concerning the competency of such witnesses. 22 C. J. 574; City Nat. Bank v. Jordan, 139 Iowa, 499, 504, 117 N. W. 760.

The judgment should be affirmed.

On rehearing.

PER CURIAM. A rehearing has been had in this case and the majority of the court is agreed to the views expressed in the opinion previously rendered herein. That opinion is therefore adopted as the opinion upon rehearing. The chief justice adheres to the views expressed in his dissenting opinion and Judge Burr concurs in that opinion.

BRONSON, Ch. J., and BIRDZELL and CHRISTIANSON, JJ., and BURR and PUGH, Dist. JJ., concur.

The Honorable A. G. BURR, District Judge of the Second District, and the Honorable THOMAS H. PUGH, District Judge of the Sixth District, sitting upon rehearing in place of NUESSLE and JOHNSON, JJ., disqualified.