[File No. 6265.]

A. J. NATHAN, Respondent, v. SAX MOTOR COMPANY, a Corporation, and Fred Derouin, Appellants.

(256 N. W. 228.)

Opinion filed August 23, 1934.

*C. H. Starke,* for appellants.

*J. W. Sturgeon,* for respondent.

BURR, Ch. J.  Plaintiff brought action to recover damages in conversion.  Motions for directed verdict were made, the jury discharged, and the court found for the plaintiff.  From the judgment entered the defendants appeal.

Plaintiff had a chattel mortgage upon the 1932 crops of one Mischel to secure the payment of a promissory note for $312.00 and interest at 9%.  The defendants, with actual knowledge of this chattel mortgage, but with the consent of the mortgagor, took three loads of the wheat in January, 1933, sold the grain, and applied the proceeds on a debt from the mortgagor to the Motor Company.  On demand they failed to return the wheat.

This action was commenced June 21, 1933, and the court permitted the plaintiff to recover for the highest market value of the grain, entering judgment for the amount due on the note with interest.

Defendants say the court erred in permitting the plaintiff to recover for the highest market value; that there is no proof of the highest market value of the grain taken; that the court should not have allowed

the plaintiff to recover interest on his note; and that the undisputed evidence shows plaintiff should be required to credit on the indebtedness due from Mischel the sum of $167.55, the proceeds of some wheat tickets which they say the plaintiff received.

Section 7168 of the Compiled Laws provides: "The detriment caused by the wrongful conversion of personal property is presumed to be:

"1. The value of the property at the time of the conversion with the interest from that time; or,

"2. When the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and,

"3. A fair compensation for the time and money properly expended in pursuit of the property."

It becomes important to determine the time of conversion. According to the record the plaintiff did not know of the taking of this mortgaged property until two or three weeks before the action was commenced. On June 19, 1933, demand for return was made and the action was commenced on the 21st.

But demand is not always necessary in order to prove conversion. In this case before the defendants took any of the grain both the mortgagee and the mortgagor told them the grain was mortgaged. The record shows that with full knowledge of this mortgage they took from the mortgagor a bill of sale for three loads of grain, stating in effect they would take their chances on the mortgage. The grain was sold immediately and the proceeds appropriated by the Sax Motor Company, the other defendant being its agent. As stated in Weigel v. Powers Elevator Co. 49 N. D. 867, 194 N. W. 113: "When property is taken subject to a lien, a conversion thereof does not take place until some affirmative act on the part of the defendant, like tortious detention thereof from the owner, or the party entitled to the possession thereof, or an exclusion or defiance of such party's rights, or the withholding of possession under a claim of title inconsistent with that of the plaintiff or owner." Defendants had no lien on the grain they took. The taking was tortious. Hence demand was unnecessary. Company A, First Regiment v. Hughes, 49 N. D. 626, 630, 193 N. W. 144.

It is clear in this case the conversion took place when the grain was

taken and sold. Defendants deliberately put it beyond their power to return the property taken. What they did they did in defiance of plaintiff's rights. Demand therefore became immaterial. The defendants could not have returned this particular grain nor did they want to do so. They are not warehousemen who may return grain of like quantity and quality.

Conversion taking place in January, 1933, and the action having been commenced June, 1933, it becomes important to determine whether the action was "prosecuted with reasonable diligence." The commencement of the action within two or three weeks after the plaintiff knew the grain had been taken and sold is certainly reasonable diligence under all the circumstances in this case. This question of reasonable diligence became a question of law. See First Nat. Bank v. Red River Valley Nat. Bank, 9 N. D. 319, 83 N. W. 821.

The record shows the highest market value for No. 1 Northern wheat between January, 1933, and the time of trial was $1.01 per bushel.

It is said there is no proof of the highest market value of the grain of the quality taken. There is showing the grain taken was No. 1 Northern wheat. There is no merit in this objection.

In ordering judgment for the plaintiff the court permitted recovery for the amount due on the note with interest less the payments which the plaintiff conceded. Defendants say that under the provisions of § 7168 no interest should be allowed on the note. Under subdiv. 1 the plaintiff could recover the value of the property at the time of the conversion and interest on the value of this property, or under subdiv. 2 he may recover the highest market value without interest on its value. Recovery is not allowed for the highest market value *and interest;* but that means interest on the highest market value. It has no reference to interest upon the indebtedness. This is clear from the entire section. The court was correct in ordering judgment for the interest due on the note.

In September, 1931, the mortgagor had given the Oliver Farm Equipment Sales Company a chattel mortgage upon the crop involved. This mortgage proved to be invalid because combined with mortgage on other property; but in May 1933 the mortgagor sold three loads of the grain taking three warehouse receipts therefor, one of them being

in the name of the company as well as his own. During all this time the plaintiff was the representative of this company as block man on the territory where the crop was raised. On the 9th of June, 1933, the receipts were delivered to the warehouseman who issued a check for $167.55 to *H. A.* Nathan intending it for plaintiff.

There is a dispute between the parties regarding this incident. The elevator agent claims that when the warehouse receipts were issued they were delivered to the plaintiff, who later surrendered them and received this check. The plaintiff says the warehouse receipts were not delivered to him; that he received them from his employer with instructions to cash them and remit the proceeds; that he took them to the elevator and exchanged them for this check, cashed it and sent the proceeds to the Oliver Farm Equipment Sales Company who credited the mortgage on his debt to the company.

The trial court found for the plaintiff, without requiring the plaintiff to credit this amount upon the indebtedness.

It is the claim of the defendants that this check was the proceeds of the mortgaged wheat; that the plaintiff knew it, but nevertheless personally remitted to the Oliver Farm Equipment Sales Company for payment upon another debt and thereby waived his lien to the extent of this check.

There is nothing in the warehouse receipts or in the check itself which indicates where the wheat was raised, nor anything in the record showing knowledge or ignorance on the part of plaintiff as to source of proceeds. The plaintiff denies receiving the warehouse receipts and sending them in to the company. He says that as agent and employee of the company the receipts were sent to him from the company, the check taken in payment thereof, the proceeds remitted to the company.

Waiver is a matter of intent. It is not claimed the plaintiff waived his lien on the grain converted by defendants, nor are the defendants laying claim to the grain the proceeds of which went to the Sales Company. What they claim is that plaintiff waived his lien on a portion of the property on which he had a lien and thus they may profit thereby. But there is nothing in the record showing the plaintiff intended the mortgagor should sell any of the mortgaged grain to pay any debt, or knew he was doing so, or permitted or authorized the same. The record is silent as to whether the mortgagor had other grain or that plaintiff

knew he did not; and the mere fact that the plaintiff, as an employee of the creditor, received the warehouse receipts and under his instructions cashed them and remitted the proceeds to his employer is not proof of waiver. The trial court was correct in not requiring plaintiff to credit this amount upon his note.

There is a dispute as to the rate of interest computed. The note drew interest at 9%; but the trial court in its findings authorized interest at 8% and the plaintiff has not appealed. However the plaintiff, knowing his note drew interest at 9% and overlooking the rate stated by the findings calculated interest at 9%. He consents to reductions of the judgment from $210.63 to $204.16. As a matter of fact the findings should have been corrected to show 9%; but as the plaintiff is satisfied to accept 8% the judgment will be reduced accordingly. The judgment is affirmed with costs to the respondent.

CHRISTIANSON, MOELLRING, NUESSLE and BURKE, JJ., concur.