## DAVIS v. CHILDERS.

1. EQUITABLE CHATTEL MORTGAGE.—An agreement founded on valuable consideration, to give a mortgage on a chattel, constitutes an equitable mortgage.

2. IBID.—An equitable mortgage on a chattel may be created by parol, and such agreement to give a mortgage need not be in writing.

3. CHATTEL MORTGAGES are of two kinds—*legal* and *equitable*.

4. EQUITABLE CHATTEL MORTGAGES are of two kinds—those containing words of alienation sufficient in form to pass the legal title, and those which do not contain such words of alienation.

5. IBID.—Where an equitable chattel mortgage does not contain words of alienation, the mortgagee must seek the enforcement of his rights in a court of equity.

6. IBID.—ESTOPPEL.—The mortgage in this case was an equitable chattel mortgage without words of alienation, and the defendants, by their wrongful act, have estopped themselves from interposing the defense of equitable mortgagee.

Before WATTS, J., Anderson, October 29, 1894. Affirmed.

Action by A. A. Davis against S. D. Childers, for possession of personal property, and for damages for detention and malicious seizure.

The Judge charged the jury as follows:

This is an action brought by A. A. Davis against Messrs. Childers and Laboon. The complaint in substance states that the plaintiff was in lawful possession of one open top buggy worth $60, and one set of harness worth $6, and that on the 3d of November, 1893, the defendant, Laboon, entered his premises and seized and carried it away without any authority of law, and turned it over to Mr. Childers, and that he (Laboon) entered as agent for Childers and took possession of the buggy and harness in a high-handed way, and that he (plaintiff) was damaged in the sum of $2,000. That was on the 3d of November, 1893. He also alleges, that on November 11th, 1893, the agent (Laboon) entered and took from his premises a horse, which he claims was worth $150, and that by reason of that high-handed seizing he has been damaged in the sum of $5,000.

The defendant, Childers, says that he did send Laboon there to seize the property, but that he had an equitable mortgage on the property, and that he had gone on a note for Davis, and that Davis had agreed to give him a mortgage on the horse, mule, wagon and buggy, and crop, and that he did go on that note for Davis, and that he had to pay it, and that by reason of that he sent his agent (Laboon) there to take possession of the property, and, he says, to take peaceable possession of it. The defendant, Laboon, admits that he went there and took the property, and he says that he took it in a quiet and in a peaceable way. Now you have heard a good deal of testimony in the case, and you have heard a good deal of law read by counsel. You are the sole judges of the testimony, and it is my duty to give you the law, and you apply the testimony to the law as I give it to you, and find your verdict accordingly. It is also my duty, too, to construe any written instrument which is offered in evidence here for you. I charge you, as a matter of law, that if these defendants here took possession of that property which had the endorsement on the back appointing Mr. Laboon as his agent, I charge you that that was an illegal seizure, because that mortgage was not signed, sealed, or delivered. It was drawn up for that purpose, but it was never done, and it does not matter that he did agree to sign it, if he lied about it, and, by deceiving Mr. Childers, got him to sign the note for him, and promised to give him a mortgage on that property, and then did not sign the mortgage, that does not create such a mortgage as will allow a man to deputise a man as his agent to go and seize it. So, that being the case, it will be your duty to find a verdict for the plaintiff in this case. He had no right, under that paper, to send his codefendant (Laboon) there to take the property. Childers admits that Laboon was his agent, and, therefore, Childers becomes responsible for all of the acts of Laboon. So, if the testimony satisfies you that the property was taken in such a highhanded, riotous, illegal way, or anything of that sort, it is

for you to say, under the testimony, what damages you will give, if you give any, and what damages you give for that, will be as smart money, as vindictive damages.    There is also some complaint here, and damages asked for, for being kept out of that money.    So both are before you, the actual damages and the punitive damages.    Now, in the case of Samuels against the Railroad, Mr. Justice Pope says: "It must be borne in mind whenever a *tort* sounds in exemplary damages, that it belongs to a particular class of actions; it is one species of that class.    A *tort* that sounds in exemplary damages is where some right of person or property is invaded maliciously, violently, wantonly, or with reckless disregard of social or civil obligations.    The terms maliciously and wantonly are used in this definition in the sense that they are applied by writers in connection with the subject here considered.    To entitle a plaintiff to exemplary damages, he must not only prove the elements that enter in to make up this cause of action, but he must, in the first place, in his complaint, set up distinctively the elements that make up this cause of action, and if he fails to do so, his complaint should be dismissed."    *Samuels* v. *R. R.*, 35 S. C., p. 501.    Well, that has been done here, and it is for you to say whether the testimony given here on the stand bears out the allegations in the complaint of the plaintiff here.    Was the premises of the plaintiff invaded by these defendants and the seizure made with malice, violently and wantonly?    Now, in the case of *Duckett* v. *Poole*, 34 S. C., about the same law is laid down.    Under my view of the law of the case as I have already given you, the plaintiff is entitled to the value of or the recovery of the property.    You will remember what the plaintiff said about the value of the property at so much, you can find the value of the property of the defendant, and then whatever damages the plaintiff has suffered by reason of being kept out of this property; and if you believe the property was seized in a high-handed, violent, and malicious manner, as described, it is for you to say what punitive damages you will give

him; it is for you to say what damage, if any, he should recover.   Under my view of the law, the property seized must be returned, or, in case it cannot be had, then the value of it to be found for the plaintiff.

Now the plaintiff has requested me to charge you:

1st. "That even if the Court should hold, from the evidence, that the defendants had a right to an equitable mortgage on the property seized, that such mortgage would give no right to seize the property, but the mortgagee must go into equity and establish his mortgage."   I charge you that.

2d. "That the act of the agent, Laboon, was, in contemplation of law, the act of his principal, Childers, and Childers is liable in damages for any wrongful act of the agent, Laboon, within the scope of his agency."   I charge you that.

3d. "That in assessing the damages, the jury may take into consideration any acts of aggravation or wanton disregard of plaintiff's rights, and may award punitive or exemplary damages for such disregard or aggravation."   I charge you that as law.

4th. "That if the jury find that Laboon took the property in dispute or any of it by force, he was a trespasser in such taking, had thereby violated the law of the land, and the jury, in its discretion, may award punitive or vindictive damages for such unlawful taking."   I charge you that as good law.

5th. "That, it being admitted by the defendants that Laboon was the agent of Childers to seize the property in dispute, every act of Laboon done in such seizure was the act of Childers."   I so charge you.

I am requested by the defendants to charge you as follows:

1. "That an agreement founded upon valuable consideration to give a mortgage on a chattel creates an equitable mortgage on the principal; that equity regards what ought to have been done as having been done."   I charge you that as law, with this addition: Provided, That that is not a parol or verbal agreement, but that it is reduced to writing.

2. "That the signing of a note as surety for another is a sufficient consideration to sustain an agreement to give a mortgage to indemnify the surety." I charge you that, with this addition: That while it would be a sufficient consideration to create an agreement to give a mortgage in this case, the agreement to give a mortgage ought to have been reduced to writing, and not to be a parol agreement.

3. "That one having an equitable mortgage founded on valuable consideration has the right to the possession of the property covered by it as soon as default is made in the payment in the obligation, which same was intended to secure." I charge you that, with this addition: That that agreement to give an equitable mortgage must be in writing.

4. "If the plaintiff, Davis, agreed to give the defendant, Childers, a mortgage on the property in dispute to indemnify him against loss, in consideration that said Childers would sign a note as surety for him, and Childers did sign such note as surety, such agreement, on the part of said Davis, would constitute an equitable mortgage on said property." I refuse to charge you that as law.

5. "That if said Childers signed a note for said Davis as his surety, and said Davis, in consideration thereof, agreed to give said Childers a mortgage on said property in dispute to indemnify him against loss, and said Davis did not pay said note when due, and said Childers paid off the same by giving his own note, secured by mortgage of real estate, said Childers had the right thereupon to enforce said agreement as a mortgage and to take possession of the property covered by the same wherever he found it, and sell it and apply the proceeds to indemnify himself." I refuse to charge you that. That is not the law of this case, according to my view of it.

6. "That if said Childers had the right to the possession of the property in dispute, he had the right to take it wherever he found it, and to use so much force as was necessary for that purpose, if he did not violate the criminal law." I

refuse to charge you that, because I have already given you what I conceive to be the law in this case.

7. "If said Childers had the right to the possession of said property, he had the right to take it wherever he found it, and to use so much force as was necessary for that purpose, and would not be liable to an action for damages unless he used more force than necessary for the taking of said property, and then only for the damage accruing from the use of such excessive force." I refuse that request, because I have already charged you that under my view of the law that Mr. Childers did not have any equitable mortgage there, and that he had no right to take this property, because the plaintiff had the right to have possession of the property or the value thereof. I have charged you as to punitive damages.

8. "That if said Childers had the right to the possession of said property, and used no more force in taking possession than was necessary for that purpose, he would not be liable to the plaintiff in this action, even though he used such force as amounted to a violation of the criminal law." I refuse to charge you that.

Now, as I have said before, you have heard the testimony, and I have given you the law, and you will apply the facts to the law as I have given it to you. The form of your verdict will be: We find for the plaintiff the property in dispute; or, in case the property cannot be had, the value thereof, and so many dollars damages, if you find damages, and sign your name as foreman. If you find for the defendants, say: We find for the defendants, and sign your name as foreman.

The jury found for the plaintiff the possession of the property, or the sum of $175, the value thereof if return cannot be had, and $235 damages. From this judgment the defendants appeal upon the following exceptions:

1. Because his Honor erred in charging the jury that if defendant, Laboon, took possession of the property in dis-

pute, under the mortgage, which had the endorsement of authority, it would be an illegal seizure, because that mort- was never signed, sealed, and delivered, and it made no difference if Davis had agreed to sign it, if he had lied about it, and by deceiving Mr. Childers, got him to sign the note for him, and promised to give him a mortgage on the prop- erty, and then did not sign the mortgage, that did not create such a mortgage as would allow a man to deputise a man as his agent to go and seize it.

2. Because his Honor erred in charging the jury that the plaintiff was entitled to recover the property sued for, or the value thereof.

3. Because his Honor erred in charging the jury, as re- quested by plaintiff in his first request to charge, to wit: That even if the Court should hold from the evidence that the defendants had a right to an equitable mortgage on the the property seized, that said mortgage would give no right to seize the property, but the mortgagee must go into equity and establish his mortgage.

4. Because his Honor erred in charging the jury, as re- quested by plaintiff in his fifth request to charge, to wit: That if the jury found that Laboon took the property in dispute, or any of it, by force, he was a trespasser in such taking, and thereby violated the law of the land, and the jury, in its discretion, may award punitive or vindictive damages for such taking.

5. Because his Honor erred in not charging the jury, as requested by the defendants in their first request to charge, to wit: That an agreement founded upon valuable consid- eration to give a mortgage on a chattel, creates an equitable mortgage, on the principle that equity regards what ought to have been done as having been done, without adding the following: "Provided, that that is not a parol or verbal agree- ment, but that it is reduced to writing."

6. Because his Honor erred in not charging defendants' second request to charge, to wit: "That the signing of a note as surety for another, is a sufficient consideration to

sustain an agreement to give a mortgage to indemnify the surety;" without adding the following qualification, to wit: "That while it would be a sufficient consideration to create an agreement to give a mortgage in this case, the agreement to give a mortgage ought to have been reduced to writing, and not be a parol agreement."

7. Because his Honor erred in not charging the jury defendants' third request to charge, to wit: "That one having an equitable mortgage, founded on valuable consideration, has the right to the possession of the property covered by it, as soon as default is made in the payment of the obligation which the same was intended to secure;" without adding the following, to wit: "That that agreement to give an equitable mortgage, must be in writing."

8. Because his Honor erred in refusing to charge the jury, as requested by defendants in their fourth request to charge, to wit: "If the plaintiff, Davis, agreed to give the defendant, Childers, a mortgage on the property in dispute, to indemnify him against loss, in consideration that said Childers would sign a note as surety for him, and Childers did sign such note as surety, such agreement on the part of said Davis would constitute an equitable mortgage on said property."

9. Because his Honor refused to charge the jury, as requested by defendants in their fifth request to charge, to wit: "That if said Childers signed a note for said Davis as his surety, and said Davis, in consideration thereof, agreed to give said Childers a mortgage on said property in dispute, to indemnify him against loss, and said Davis did not pay said note when due, and said Childers paid off the same by giving his own note, secured by mortgage of real estate, said Childers had the right thereupon to enforce said agreement as a mortgage, and to take possession of the property covered by the same, wherever he found it, and sell it and apply the proceeds to indemnify himself."

10. Because his Honor erred in refusing to charge the jury, as requested by the defendants in their sixth request to charge, to wit: "That if said Childers had the right to

take the possession of the property in dispute, he had the right to take it wherever he found it, and to use so much force as was necessary for that purpose, if he did not violate the criminal law."

11. Because his Honor refused to charge the jury, as requested by defendants in their seventh request to charge, to wit: "If said Childers had the right to the possession of said property, he had the right to take it wherever he found it, and to use so much force as was necessary for that purpose, and would not be liable in an action for damages, unless he used more force than was necessary for the taking of said property, and then only for the damage accruing from the use of such excessive force."

12. Because his Honor erred in not charging the jury, as requested by defendants in their eighth request to charge, to wit: "That if said Childers had the right to the possession of said property, and used no more force in taking possession than was necessary for that purpose, he would not be liable to the plaintiff in this action, even though he used such force as amounted to a violation of the criminal law."

13. Because his Honor erred in charging the jury that a parol agreement founded on valuable consideration to give a mortgage on a chattel would not constitute an equitable mortgage, and that such parol agreement would give no right to the possession of such chattel, though the obliga-. tion which same was intended to secure was due and unpaid.

14. Because his Honor erred in not leaving it as a question of fact to the jury to say from the testimony whether or not Davis, the plaintiff, had made a parol agreement with defendant, Childers, to give him a mortgage on the property, in consideration of said Childers signing a note for him as surety, and not charging them that if they found from the evidence that such agreement had been made, and that said Childers had so paid said note, relying on said agreement, he had the right to enforce said agreement as a

mortgage, and to take possession of the property so agreed to be mortgaged, and sell the same to save him harmless.

*Messrs. Shuman & Dean*, for appellants.

*Messrs. Bonham & Watkins* and *Tribble & Prince*, contra.

Sept 17, 1895. The opinion of the Court was delivered by

MR. JUSTICE GARY. This action was commenced in January, 1894, by the plaintiff against the defendants, to recover possession of a buggy, set of harness, and one horse, of the alleged values, respectively, of $60, $6, and $150; also to recover $5,000 damages for the alleged wrongful and malicious seizure of said property.

It is alleged in the complaint, that the defendant, S. D. Childers, procured and directed the defendant, J. B. Laboon, to seize and take from the possession of the plaintiff said property, during the absence of the plaintiff from home, and in defiance of the direction and command of the plaintiff's wife, who forbade such taking; it was further alleged, that the defendant, J. B. Laboon, seized and carried away said property without any authority of law or right whatever, and delivered it to the defendant, S. D. Childers, or kept or disposed of said property under the direction of said Childers, and that the defendants refused to deliver possession of said property to the plaintiff.

The defendants answered said complaint by separate answers, alleging that about the 6th day of January, 1890, the plaintiff, wishing to borrow the sum of $292 from John Tompkins, requested the defendant, S. D. Childers, to sign a note with him to said Tompkins for said amount, as surety for the plaintiff, and that said Childers agreed to sign said note as surety, if the plaintiff would execute and deliver to him a mortgage on said property, and other property not in dispute here, to indemnify and save him harmless on account of such suretyship; that the plaintiff agreed to execute to said Childers said mortgage, and that Childers, relying upon the said agreement of the plaintiff,

signed said note as surety for him, that after Childers signed said note as surety for the plaintiff, he refused to execute and deliver to him the said mortgage, as he had agreed to do; that said plaintiff having failed to pay said note at maturity, the said Childers was compelled and did pay the same; that having requested the plaintiff to execute and deliver the said mortgage according to his agreement, and he having refused to do so, the said Childers, being advised that said agreement to mortgage constituted an equitable mortgage, with the right in said defendant to seize said property and sell the same for the purpose of indemnifying himself, caused said property to be seized and sold, and the proceeds applied to reimburse him and save him harmless, and that the same was done in a peaceable manner. And they allege, further, that the said agreement constituted an equitable mortgage, giving said Childers the right to seize said property and sell the same for the purpose of saving himself harmless, he having paid the note which he signed as surety, and that he caused said seizure to be made by his codefendant, J. B. Laboon, whom he appointed as agent for that purpose.

The cause came on for trial at the October (1894) term of the Court for Anderson County before his Honor, Judge Watts, and a jury.

The note and mortgage which, it is alleged, the plaintiff agreed to sign, is set out in the case, upon which is this endorsement: "South Carolina, county of Anderson. I hereby appoint J. B. Laboon my agent to execute the within mortgage. November 13th, A. D. 1893. S. D. Childers." In the "Case" the following statement appears: "On line 8, page 44, and on line 20, page 45, appears the name of A. A. Davis, as signed to the note and mortgage therein set forth; whereas it was never signed by Davis, he being unable to write, nor did he ever authorize any other person to sign his name or affix his mark to the said note and mortgage; but, on the contrary, when the same had been prepared and presented to him, he refused to sign the same.

His name was written by the person who prepared the papers in the anticipation of his affixing his mark to it, but this he refused to do."

The jury rendered the following verdict: "We find that the plaintiff is entitled to recover the possession of the property sued for, and in case delivery cannot be had, for the value thereof, $175, and for $235 damages." The charge of the presiding Judge to the jury and the appellants' exceptions will be set forth in the report of the case.

In considering the questions raised by the exceptions, we will follow the arrangement adopted by the appellants' attorneys in their argument before this Court, to wit: "1st. Whether or not an agreement founded on valuable consideration to give a mortgage on a chattel constitutes an equitable mortgage? 2d. If such agreement does constitute an equitable mortgage, whether or not it must be reduced to writing in order to have that effect; or, in other words, whether or not verbal agreement founded on valuable consideration to give a mortgage on a chattel, constitutes an equitable mortgage? 3d. Assuming that such agreement does constitute an equitable mortgage, whether or not the equitable mortgagee, having taken possession of the property covered thereby after default in the payment of the obligation which the same was intended to secure, and having sold the same for the purpose of paying such obligation, can successfully plead such agreement in defense to an action brought against him for the possession of said property?"

The cases of *Read* v. *Adm'r of Simons*, 2 DeS. Eq., 552; *Dow* v. *Ker et al.*, Speers Eq., 413; *Parker & Co.* v. *Jacobs*, 14 S. C., 112, show that the first of said questions must be answered in the affirmative. The Am. & Eng. Enc. of Law, vol. 3, page 179, under the head of "Chattel Mortgages," and Cobbey on Chattel Mortgages, vol. 1, secs. 14 and 15, show that such mortgage may be created by parol, and that it is not necessary that the agreement to give such mortgage should be in writing.

We come next to a consideration of the exceptions raising

the third question.  Chattel mortgages are divided: 1st, into *legal* and *equitable* mortgages;  2d, the equitable mortgages are divided into those containing words of alienation sufficient in form to pass the legal title to property;  but where the property at the time of the execution of the mortgage is not *in esse,* and those where there are no words of alienation sufficient in form to pass the legal title to the property mortgaged. When the mortgage contains words of alienation as aforesaid, and the property mentioned therein is not *in esse* at the time the mortgage is executed, the mortgagee has the right to take the property into his possession when it comes into existence, but his right to seize the property is based upon the words of *alienation* contained in the mortgage.

When there are no such words of alienation, the mortgagee must seek the enforcement of his rights in a court of *equity.*  By observing this distinction is the only way in which the cases of *Perkins* v. *Bank,* 43 S. C., 39;  *Whilden & Co.* v. *Pearce,* 27 S. C., 44, and *Moore* v. *Bynum,* 10 S. C., 452, can be harmonized with the case of *Green* v. *Jacobs,* 5 S. C., 280.

There was, in the case before us, only an equitable mortgage, without words of *alienation;* and his Honor, Judge Watts, was right in charging the jury that such a mortgage did not confer upon the mortgagee the right to seize and sell the property in dispute.

Although it was error on the part of the presiding Judge in charging the jury that it was necessary that the agreement should be in *writing* in order to create an equitable mortgage, such error was harmless, as, under the view which we take of the case, the defendants had no right to seize the property, even admitting that Childers had an equitable mortgage.  The allegations of the answer do not constitute a defense to the plaintiff's cause of action, not because there may not be merit in them, but because the defendants, by their wrongful act, have estopped themselves from interposing such defense in this proceeding.

10—45

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.