JOHN SUCHY, Respondent, v. J. J. STRAIN, Appellant.

(199 N. W. 193.)

**Replevin — action for possession of personal property maintainable by one lawfully entitled thereto by virtue of special property.**

1. Under § 7517 of the Compiled Laws for 1913, an action to obtain pos-

Note.—(1) Right of action to obtain possession of property by one lawfully entitled thereto, see 23 R. C. L. 867, 869.

(2) Lien on real or personal property may be created by agreement, see 17 R. C. L. 604; 4 R. C. L. Supp. 1142.

session of personal property may be maintained by one who is lawfully entitled to the possession by virtue of a special property.

**Liens — equitable lien may be created on property by contract clearly expressing intention to pledge for payment of indebtedness without express reservation.**

2. Where a contract clearly expresses an intention to pledge certain property for the payment of an indebtedness, it may create an equitable lien on the property without express reservation.

**Liens — land contract held to create equitable lien on crop.**

3. Where a contract provides for the sale of land on the crop payment plan and it is expressly stipulated that one-half of the grain crop raised each year shall be delivered to the vendor, the price determined according to the market price and the value credited on the contract, an intention to pledge half the crop for the payment of the annual installment on the purchase price clearly appears, and, as between the parties to the contract, an equitable lien is created.

Opinion filed June 4, 1924.

Liens, 37 C. J. § 20 p. 317 n. 85; § 22 p. 319, n. 95. Replevin, 34 Cyc. p. 1390 n. 71.

Appeal from the District Court of Morton County, *Jansonius,* J. Affirmed.

*T. J. Krause,* for appellant.

*L. H. Connolly,* for respondent.

BIRDZELL, J. This is an appeal from an order overruling a demurrer to the complaint. The action is one in which the plaintiff seeks to recover from the defendant possession of one half of the grain grown on certain described land. The complaint alleges that on the 9th of January, 1920, the plaintiff and defendant entered into a contract for the sale of certain described land by the plaintiff to the defendant; that in this contract the plaintiff was the party of the first part and the defendant the party of the second part and that the contract contained the following provision:

"Said party of the second part shall each year plant to crops all the cultivated land upon said premises, and shall farm said cultivated land in a good and farmer-like manner, and shall plant said crops at the proper time and in the proper manner and shall harvest and thresh

said crops at the proper time and in the proper manner, and shall prior to the first day of December in each year, deliver to said party of the first part at an elevator in the city of Mandan, one-half of all grain crops raised upon said land, and the price of said crops so delivered to said party of the first part shall be determined and fixed by the market price of said crops at the said elevator at the time of delivery thereof, and the value of said crops so delivered to the said party of the first part, as herein determined, shall be first applied to the payment of the interest then due upon the purchase price herein named, and the balance, if any, shall be applied upon the principal of the purchase price herein named."

It is alleged that the contract is in full force and that under its provisions the plaintiff is entitled to the possession of half the crop grown in the year 1923, and that during that year there was grown upon the premises 899 bushels of wheat; that this crop was grown by a third party who farmed the land as a tenant of the defendant; that the defendant delivered to the tenant one half of the crop and caused the other half to be delivered in Mandan, but that he had failed, neglected and refused to deliver the grain to an elevator in the city of Mandan as required by the terms of the contract. The plaintiff alleges that the demand for delivery and possession was refused. It is contended by the appellant that, according to the contract alleged, the plaintiff agreed to sell the land for a cash consideration of $6,500 and that he had not agreed to pay for the land in crop but merely to deliver half of the crop at an elevator in Mandan prior to the first day of December of each year and to receive a credit upon the contract of the price determined by the market at the time of delivery. Hence, it is argued, it was not contemplated that the title to any part of the crop should pass to the plaintiff. It is said that as the defendant is the vendee under the contract, he is, in contemplation of law, the owner of the land and the owner of the crops grown, and that, as the contract contains no reservation of title affecting the crop, the vendor has no such interest in half the crop as to warrant his taking possession of it.

The appellant, in support of his contentions, relies principally on the case of Moen v. Lillestal, 5 N. D. 327, 65 N. W. 694, and particularly upon the following expression at page 331 of the opinion:

"The land was not 'let' to Lillestal. It was sold to him. He became the full equitable and beneficial owner. Moen held the legal title as

security. He was a mortgagee, in effect, as he admits by bringing this action to foreclose the contract. Lillestal was to pay the owner nothing for the use of the land. He himself was the owner, and what he agreed to pay Moen was the purchase price of the land; and even that was not to be paid in crops, but in money. True, the amount to be paid each year was measured by the market value of a certain share of the crop; but Lillestal could claim no credit until that share was sold, and then only for the amount realized. . . . It is clear that nothing in the nature of this contract constituted these parties tenants in common of the crops. If they were such, it must be by virtue of the language of the contract itself. And when we remember the nature of the contract; that by its terms the payments might extend over a long series of years; that the land at the time of the sale was largely unbroken prairie; that the purchaser was bound to put valuable improvements thereon before the maturity of his first crop; that his failure to do so, or his failure in any payment, authorized the vendor to at once bring his foreclosure action, thus giving the vendor fair security for the due performance on the part of the vendee,—remembering these things, it seems to us, that an executory contract for the sale of a half interest in the crop, extending over so many years, ought to rest upon something more substantial than a possibility or an inference."

At this point it may be proper to note some distinctions between the contract involved in the Moen-Lillestal Case and the contract in the instant case. The pertinency of these distinctions may further appear in the subsequent discussion in this opinion. In the Moen-Lillestal case the contract provided for the delivery of the crops, etc., as soon as threshed "receipts for the same to be made out in the name of the party of the first part and to be at once sent to him;" that the party of the second part should have the option of the sale of the grain "up to the first day of December, but on and after that date this option shall cease, and the sole right of sale belong to the party of the first part." It was further provided that the proceeds of the sale should be applied to the payment of delinquent taxes, insurance and storage and then "to the payment of the principal until the same has been paid in full." Thus far the contract is quite similar to the contract in the instant case, which, perhaps, is not as definite and specific in its terms. It provides, however, for the delivery prior to the first day of December

in each year to the party of the first part at an elevator in the city of Mandan, and instead of providing that the proceeds of the sale shall be applied, it provides that "the price of said crop so delivered  .  .  . shall be determined and fixed by the market price of said crops at said elevator at the time of delivery thereof, and the value of said crop so delivered to the said party of the first part as herein determined, shall be first applied to the payment of the interest then due upon the purchase price herein named and the balance, if any, shall be applied upon the principal of the purchase price herein named." Thus far the contracts are so similar as to be scarcely distinguishable in their legal effect.    However, in the Moen-Lillestal contract there was a further provision as follows:  "The party of the second part covenants and agrees to duly execute and place on file or record, as the case may be, a chattel mortgage on one half ($\frac{1}{2}$) the entire crop sown, planted or to be raised upon said premises; said chattel mortgage to be drawn in favor of the party of the first part, and to be a first or prior lien on that portion of the crop mortgaged, and to be given on or before May 15, 1892, and yearly thereafter until one half ($\frac{1}{2}$) of the purchase price of said land shall have been fully paid, together with the interest on the same."  There is no allegation in the complaint in this case of any similar provision.  This court, in the Moen Case, construed this provision as applying to the one half the crop, the proceeds of which were to go to the vendor of the land.  It will be seen that under this provision the ownership of the crop was not only assumed to be in the purchaser of the land, but it was further assumed that without the mortgage other chattel mortgage claimants might be prior.  In the Moen-Lillestal Case the controversy was between Moen and the chattel mortgagee of the crop; whereas in the instant case the controversy is between the vendor and the vendee of the land.  In the former case the contract was abandoned by the purchaser; whereas in the instant case it is alleged that the contract is still in force between the parties.

Insofar as this may be deemed a possessory action it is classified as a provisional remedy.  Comp. Laws of 1913, § 7487.  The plaintiff may maintain such an action (Comp. Laws, 1913, § 7517) "when he is the owner of the property claimed,  .  .  .  or is lawfully entitled to the possession thereof by virtue of a special property therein."  It is, therefore, not essential that the plaintiff's title shall be absolute,

but it is sufficient if he have a qualified title accompanied by the right of possession. 23 R. C. L. 864. Granting the soundness of the appellant's argument that the contract did not create an ownership in common of the crops and that they were owned by the defendant as the purchaser and equitable owner of the land, it does not follow, in our opinion, that this ownership is a full legal and beneficial ownership. On the contrary, a qualified ownership in the plaintiff is entirely consistent with the general property interest in the defendant. It must be conceded that the defendant's possession of the land is derived from the contract, and it must further be conceded that his ownership of the crop is likewise so derived. The contract purports to give to the vendor, as security for the payment of the purchase price, the possession of one half the crop each year to the end that its value may be applied on the purchase price. It is true that neither the word security or pledge, nor any like expression, is to be found in the contract, but the language of the contract is so plain that its intent cannot be misunderstood. The contract clearly provides that an amount shall be paid upon the purchase price each year equal to the value of one half the crop and that one half the crop shall be delivered to the purchaser at a price to be determined by the market price at the date of the delivery, and this value is to be credited on the contract. The object of this provision is so apparent that it is as though it were expressed in words that the vendee agrees to pledge each year one half the crop as security for the payment of the instalment of the price due and that the vendor reserves a lien therefor. In view of the manifest object of this provision, this lien would, of course, be discharged by the payment in money of the amount for which the vendee agreed to pledge the crop. However desirable it may be that contracts to pledge or to create liens should contain apt words to that end, the purpose to create a lien is nevertheless only a matter of intention, and where the intention is as clearly and definitely expressed as it is in the instant case, we have no hesitancy in holding that an equitable lien is created. 3 Pom. Eq. Jur. 4th ed. § 1237. Equity ascribes to parties the intention to fulfill their contracts, clearly and definitely made, and where, as between the parties, that intention can only be effectuated by applying the maxim "Equity considers that done which ought to be done," the maxim will be applied to create an equitable ownership or

interest.   In fact, the defendant in this case relies on this maxim to this extent:—He says that having contracted to purchase the land, the land is his and that the crops are his, whereas the legal title to the land is in the plaintiff.   So whatever ownership the defendant has he has by virtue of the equitable maxim and his possession.

On the general doctrine of equitable liens, as applied to situations of this general character, Pomeroy on Equity Jurisprudence says (3 Pom. Eq. Jur. 4th ed. §§ 1235 and 1236) :

"Sec. 1235.   The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.   Under like circumstances, a merely verbal agreement may create a similar lien upon personal property.   The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done. In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation.

"Sec. 1236.   The doctrine is carried still further, and applied to property not yet in being at the time when the contract is made.   It is well settled that an agreement to charge, or to assign, or to give security upon, or to affect property not yet in existence, or in the ownership of the party making the contract, or property to be acquired by him in the future, although, with the exception of one particular species of things, it creates no legal estate or interest in the things when they afterwards come into existence or are acquired by the promisor, does constitute an equitable lien upon the property so exist-

ing or required at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract."

A case carrying out the doctrine of the text to its logical conclusion is that of Klaustermeyer v. Cleveland Trust Co. 89 Ohio St. 142, 105 N. E. 278. In this case one who had loaned money under an agreement whereby he was to have collateral security from the debtor, was held the equitable. pledgee of the collateral, even though it had not been selected and turned over to him. In the instant case, if this is important, the one half to which this provision of the contract shall apply is rendered definite through the allegation of quantity and through the further allegation of the delivery of the other half to the defendant's tenant. We are of the opinion that this provision of the contract creates, as between the parties, an equitable lien upon the specific grain that has thus been separated by the action of the defendant and which he has contracted to deliver to the plaintiff at the elevator.

Order affirmed.

CHRISTIANSON, JOHNSON, and NUESSLE, JJ., concur.

BRONSON, Ch. J., concurs in result.