[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 324 
Plaintiff seeks to recover damages, which she claims arose by reason of an alleged conversion by defendant of certain personal property, owned by Rex Theatre Company, in which she claims she had a special interest by virtue of two chattel mortgages executed and delivered to her by Rex Theatre Company.
The following facts are essential to an understanding of the issues. December 10th, 1919, Geo. V. Halliday and Mildred Hellstrom contemplated the formation of a copartnership for the operation of a theatre to be known as Rex Theatre Company, and on the 20th of December, 1919, said copartnership was consummated. Mildred Hellstrom is the daughter of plaintiff. They had no equipment, furniture or fixtures with which to carry on the business and no money with which to purchase that property. For the purpose of obtaining the money with which to purchase the necessary property to carry on this venture, said Halliday and F.O. Hellstrom, husband of the plaintiff, having in view the formation of the copartnership aforesaid, on December 10th, 1919, entered into an arrangement with defendant to borrow from it $3,000. In furtherance of this arrangement, three notes, payable to defendant, in the sums of $780, $780 and $1,440, due in three, six and nine months, respectively, were, on that day, signed by Rex Theatre Company, by Geo. V. Halliday, as manager, and delivered to defendant. At that time a chattel mortgage was executed by said Geo. V. Halliday and delivered to the defendant, in which mortgage the following property was described as the property mortgaged, to wit: "374 opera chairs, 2 simplex projectors complete including motors, 8 two-piece plastic side wall fixtures, 4 thirty-six inch open-work bowls, 2 2-20 rheostadts and equipment of all kinds; used by the mortgagor in the Rex Theatre located in Hinckley building at Bismarck, North Dakota." On that day or a day or two thereafter, said F.O. Hellstrom signed *Page 325 
his name to said notes as maker, and gave as security a mortgage on certain real estate situate in the state of Minnesota. The money was not placed to the credit of the parties until the bank had recorded its mortgages. In the meantime the co-partnership aforesaid had been consummated. The bank placed to the credit of Rex Theatre Company the $3,000 upon an arrangement made between the bank and Halliday, F.O. Hellstrom being present, that the money should be checked out on the joint signatures of Halliday and Mildred Hellstrom. This money was used in the purchase of equipment, furniture and fixtures for the theatre, purchased and ordered on or after December 21st, 1919. It arrived at Bismarck, commencing January 10th and continued arriving until about January 26th, 1920, at which time all the property had arrived, had been put in place, and the theatre was opened for business.
March 22d 1920, Rex Theatre Company executed and delivered to plaintiff its note, payable on demand, in the sum of $803.12 and on May 3, 1920, to secure the note, executed a chattel mortgage upon the property situate in the theatre. The description of the property in that chattel mortgage followed word for word the description as it appears in defendant's mortgage, and, in addition thereto, set forth in detail a large number of items, constituting, ostensibly, the equipment, furniture and fixtures, mentioned in general terms in defendant's mortgage. On May 8th, 1920, another note was executed by the theatre company in favor of the plaintiff in the sum of $128, payable on demand, and on the 28th of June, 1920, a third note in the sum of $1,269.36 was signed by the theatre company, payable to plaintiff, on demand. To secure these two last named notes a second chattel mortgage was given plaintiff by the theatre company, the property therein mortgaged being described in language identical with that employed in describing the property mortgaged by plaintiff's mortgage of May 3d 1920.
In November, 1921, defendant foreclosed its mortgage, seized the equipment, furniture and fixtures and sold the same under the power contained in the mortgage.
Plaintiff contends that her two mortgages are first liens on the theatre property, superior to the lien claimed by the defendant, for the reason that the property had not been acquired by the mortgagor *Page 326 
at the time of the execution of defendant's mortgage; that the mortgage gives no notice by its terms that it was the intention of the parties thereto that it should cover property to be subsequently acquired, and that she had no notice or knowledge of defendant's said mortgage at the time of making the loans to, nor at the time of taking the security from, the theatre company. On the other hand, defendant contends that its mortgage is a valid mortgage, duly filed in the office of the register of deeds; and, that in addition to the notice so conveyed to plaintiff, she had actual notice and knowledge of the terms and conditions of defendant's mortgage. Defendant further contends that it legally foreclosed its said mortgage, against the property described in the mortgage, and that therefore it is not liable to the plaintiff for any of said property.
The action was tried to a jury, which rendered a verdict for the full amount claimed by plaintiff, upon which, in due course, judgment was ordered and entered. From this judgment, defendant appeals, alleging error upon the trial, setting forth the same in a number of assignments of error, based upon the rulings of the court and the instructions of the jury.
The question of the validity of defendant's mortgage is the first question which the record logically presents for consideration. It involves a number of rulings of the court and instructions to the jury, assigned as error, which rulings and instructions are not of general interest, and are not therefore set forth in full. Plaintiff's counsel, on their briefs and on oral argument, strenuously insist that defendant's mortgage is wholly void because given upon personal property not in esse at the time of the execution of the mortgage, although afterwards acquired by the mortgagors, in that no stipulation is contained within the mortgage showing intention to mortgage property subsequently to be acquired. The trial court evidently adopted this view of the law of the case. In his instructions to the jury appears the following: "If this chattel mortgage upon its face gives no such notice of property subsequently to be acquired, then the defendant's rights are dependent upon the interest which Rex Theatre Company had in this property on the 10th day of December, 1919." The court also submitted certain special questions to the jury, two of which also point to his adoption of plaintiff's theory, namely: "Q. What do you find to be the value of the *Page 327 
property owned by the Rex Theatre Company on December 10th, 1919? Q. Did defendant bank hold the mortgage Exhibit `A' upon that property?" It will be borne in mind that it was admitted by all the parties to the case that Rex Theatre Company did not own any property of any kind or nature on the 10th day of December, 1919.
The undisputed evidence and the reasonable deductions to be made therefrom, clearly indicate a mutual intention, entertained by the parties at the time of the execution of the mortgage, that the property therein described was to be purchased with the funds to be advanced to the mortgagors by the defendant, brought to Bismarck and installed for the purpose of operating a theatre in the Hinckley building. Pursuant to that clear understanding, the mortgagors did purchase, have shipped to Bismarck and actually installed in said building, the very property which is the subject of this controversy, and in payment therefor they used the money so advanced by the defendant for that purpose. To permit the mortgagors to dispute the validity of such a mortgage would be a fraud upon defendant, resulting in gross injustice to it. Such mortgages almost universally have been held valid as between the parties and all those claiming through or under them with notice or knowledge of the facts in relation thereto. It is now well settled in this state that a lien may be created upon property to be subsequently acquired. Sec. 6706, Comp. Laws 1913 provides: "An agreement may be made to create a lien upon any property not yet acquired or not yet in existence by the party agreeing to give the lien. In such case the lien agreed for attaches from the time when the party agreeing to give it acquired an interest in the thing to the extent of such interest."
Such has been the holding of this court since territorial days. "By this section" (Comp. Laws 1887, § 4328, Comp. Laws 1913, § 6706), said Chief Justice Tripp, in the case of Grand Forks Nat. Bank v. Minneapolis N. Elevator Co. 6 Dak. 357, 43 N.W. 806, "not only is an agreement to create a lien upon property not yet in existence valid, but the lien contracted for attaches the moment that the interests of the party himself attach. There is no interim of time for hostile interests to intervene. . . . Under this statute the original contract, ipso facto, immediately upon the acquirement or creation of such property awakens and brings into life the lien agreed upon." See also Hostetter v. Brooks Elevator Co. 4 N.D. 357, 61 N.W. 49; Fargo *Page 328 
Loan Agency v. Larson, 53 N.D. 621, 207 N.W. 1003; Iverson v. Soo Elevator Co. 22 S.D. 638, 119 N.W. 1006.
The respondent, however, relies upon the elementary rule that a mortgage will not cover after-acquired property unless it contains a stipulation clearly manifesting an intention that it should do so and contends that, as the mortgage in question contained no such stipulation and the language employed to describe the property covered referred to it as "now situated" in the Hinckley building, while in fact at that time no property sought to be affected by the mortgage was so located, the mortgage could neither operate in the present nor upon property to be subsequently acquired. In this connection they strongly rely upon the case of Montgomery v. Chase, 30 Minn. 132, 14 N.W. 586. There, as here, the mortgage did not purport to cover property to be thereafter acquired, but referred to the subject matter as being in possession of the mortgagors in a definite location, whereas the property had not at the time been even purchased by the mortgagor. The court held that the legal effect of the mortgage could not be changed by any parol understanding between the parties at the time of its execution and that an intention that it should take effect upon property to be after-acquired must be expressed in the instrument and could not be shown by extrinsic evidence. In that case the plaintiffs sought to recover upon the strength of a title derived from the mortgage, while the defendants, who were not the mortgagors, were in peaceable possession of the property. It does not appear whether or not these facts were responsible for the disposition of the case, or whether the result would have been the same had the action been between the mortgagors and the mortgagee, or between the mortgagee and a subsequent purchaser or incumbrancer from the mortgagor with notice. At any rate the action was to recover possession and it was incumbent on the plaintiff to establish his right by showing something more than an equitable mortgage under which he might or might not be entitled to possession as against the defendant who was conceded to be in peaceable possession. In the case at bar the plaintiff's interest arises out of a subsequent mortgage which she must be assumed to have taken with full knowledge of the circumstances in which the defendant had received its mortgage. In so far as the Minnesota case may be considered as an authority denying to the defendant rights as an equitable mortgagee, *Page 329 
it is not persuasive and is contrary to the prevailing current of authority touching the specific question. We are not to be understood as questioning in the least degree the soundness of the case in so far as it deals with the requisites of a valid mortgage at law.
In this jurisdiction the legislature many years ago acted upon the equitable maxim "Equity regards that done which ought to be done," and provided that an agreement may be made to create a lien upon property not yet acquired and that in such case the lien attaches from the time the party agreeing to give it acquires an interest in the property. Comp. Laws 1913, § 6707; Grand Forks Nat. Bank v. Minneapolis N. Elevator Co. supra; Holroyd v. Marshall, 10 H.L. Cas. 191, 11 Eng. Reprint, 999; Kribbs v. Alford, 120 N.Y. 519, 24 N.E. 811; Mitchell v. Winslow, 2 Story, C.C. 630, Fed. Cas. No. 9,673; and notes in 76 Am. Dec. 723, and 109 Am. St. Rep. 510.
No particular form of expression is necessary to create an equitable lien on property to be acquired in the future. It is sufficient that such is the contract of the parties. "It is well settled" says Pomeroy (3 Pom. Eq. Jur. 4th ed. § 1236), "that an agreement to charge, or to assign, or to give security upon, or to affect property not yet in existence, or in the ownership of the party making the contract, or property to be acquired by him in the future, although, with the exception of one particular species of things, it creates no legal estate or interest in the things when they afterwards come into existence or are acquired by the promisor, does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by a contracting party at the date of the contract."
"Section 1237. The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appear to give, or to charge, or to pledge property, real and personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows." See Suchy v. Strain, 51 N.D. 106, 199 N.W. 193; Davis v. Childers, 45 S.C. 133, 22 S.E. 784, 55 Am. St. Rep. 757.
We are of the opinion that the rights of the parties in the case at *Page 330 
bar are to be determined according to the foregoing principles and not according to any hard and fast rule of the common law prescribing the requisites of a valid mortgage. To adopt the contentions of counsel for the respondents would be in effect to hold that a party, who had in good faith parted with money under an arrangement whereby he was to receive certain security therefor, is not only deprived of the security but is also precluded from establishing the arrangement where a form of security was actually given which was altogether ineffective by reason of the present nonexistence of the subject matter. Such a rule would be highly technical. Ordinarily, a deed which is defective by reason of an innocent mistake or error may still have the effect of an executory contract to convey (1 Warvelle, Vendors, 2d ed. § 343), and no reason is perceived why the same principle can not be properly applied to a chattel mortgage.
In the case of First Guaranty Bank v. Rex Theatre Co. 50 N.D. 322, 195 N.W. 564, this court had under consideration this identical mortgage. In that case, which was an action in claim and delivery to obtain possession of the property claimed to be covered by this mortgage, the defendant, which was the successor in interest to the property of the partnership, denied the validity of the mortgage, and in consideration of this contention, the court said:
"Defendants attack the mortgage held by the plaintiff. The property, when taken, belonged to Rex Theatre Company, a corporation, whether they got their title by gift or purchase; but a mortgagor may create a lien on property not yet acquired, and this is the situation in this case. . . . Section 6706 of the Compiled Laws of 1913 makes provision for just such a condition. . . . The mortgage being a valid mortgage on the property of Rex Theatre Co. Limited, is still a mortgage though the property afterwards came into the hands of Rex Theatre Co. a corporation, one of the defendants herein."
The mortgage conformed to all requirements of 6763, C.L. 1913, so as to admit it to be filed in the office of the register of deeds; though, of course, when filed, it was constructive notice of no more than it contained.
In this connection plaintiff contends that the mortgage signed "Geo. V. Halliday, Mgr. Rex Theatre Co." was the mortgage of Geo. V. Halliday, personally, and not that of the Rex Theatre Company, and *Page 331 
as such the filing thereof in the office of the register of deeds did not operate as notice to her thereof.
To meet this issue and also the question of notice to and knowledge of plaintiff of the fact of the existence of defendant's mortgage and the property covered by it, the defendant attempted to show by its witnesses, and offered to prove, that said F.O. Hellstrom was the agent of his wife, the plaintiff, at the time of the execution of defendant's mortgage and took part, as such, in the negotiations resulting in the execution of the mortgage. That, acting on the request of said F.O. Hellstrom, Halliday, for the theatre company, executed three other notes, payable to plaintiff, in the same amounts and of like tenor with those given the defendant, and also executed a chattel mortgage, in favor of the plaintiff, securing those notes, upon the same property as is described in defendant's mortgage; that later, January 16th, 1923, plaintiff satisfied said mortgage by executing a satisfaction piece, and the mortgage was thereupon removed from the records of the register of deeds; counsel also offered to introduce in evidence a carbon copy of such mortgage. The court sustained the objection of plaintiff's counsel thereto, and these rulings are the subject of a number of the assignments of error.
Even though the defendant's mortgage had not been recorded, and though it was executed by Halliday, individually, yet it would be a valid lien upon the property mortgaged as between the parties and as against all persons having knowledge or notice thereof and of the purposes for which it was given. If F.O. Hellstrom was, in fact, the agent of his wife, having authority to act for her in this transaction, under the settled general rule of the law of agency, she would be bound by the notice to and knowledge of her agent of the fact of defendant's mortgage, acquired by him while he was acting within the scope of the authority conferred upon him by her, even though he failed or neglected to inform her thereof. 2 C.J. 859 and citation of authorities.
It will be observed the ruling of the court closed to defendant the principal, and apparently the only, avenue by which it might show that plaintiff had notice and knowledge of defendant's mortgage, and of the property covered by it. In our opinion, this evidence was both material and proper, not only upon the question of notice and knowledge, but to show the interest of the plaintiff in the subject matter of *Page 332 
this transaction from its inception, by which the plaintiff would be precluded from maintaining that her two said mortgages given in May and July following were first mortgages on said property. The evidence was also material and proper, to lay a foundation for proof of the foreclosure, by defendant, of its mortgage. Such testimony should also have been received to be considered by the jury in determining the credibility of certain of plaintiff's witnesses who had denied notice or knowledge of defendant's mortgage, until long after its execution. After a careful examination of the record and the issues as framed we are satisfied that the ruling of the court was prejudicial error.
In relation to the subject of notice to and knowledge of the plaintiff concerning the property covered by the mortgage, the following question was asked of witness Lahr, who conducted the negotiations with Halliday, the objection to which was sustained by the court, and upon which ruling error is assigned, to wit:
Q. I hand you exhibit "A" and ask you whether at the time of the execution of said instrument you had any conversation with Mr. F.O. Hellstrom and with George V. Halliday together relative to the purpose of the writing in as part of the descriptions of property in said mortgage, the words: "and equipment of all kinds used by the mortgagor in the Rex Theatre in the Hinckley Building, Bismarck, N.D."
Mr. Knauf: That is objected to as an attempt by oral testimony to change, vary, alter and modify or clarify the terms of a written instrument, namely Exhibit "A," being shown the witness, being a chattel, mortgage heretofore offered in evidence in this case.
Judge Nuchols: This is offered to explain certain language; the ambiguous language in that clause.
Mr. Knauf: The language is very plain English language; it is properly punctuated and needs no construction of the witness, nor explanation leading up to its making.
The Court: I will sustain the objection.
The rule against the admission of parol evidence, does not preclude such evidence to identify the property described in a chattel mortgage and apply the description thereto, where the description suggests inquiry or means of identification. *Page 333 
In 5 R.C.L. 429, it is stated: "Parol evidence is admissible for the purpose of identifying the property actually mortgaged; as, for instance, where it aids in applying the description of the subject matter intended to be embraced by the mortgage, and not to change the description. It is admissible for this purpose even where the mortgage minutely describes the property."
The plaintiff's counsel, however, contends that inasmuch as a semicolon appears after the word "kinds" appearing in the description of the property that the equipment referred to is plainly the equipment of the rheostats, and not the general equipment of the theatre, and therefore requires no explanation.
Punctuation marks will usually not control or change the meaning which is plain from a consideration of the whole document and the circumstances in connection with the execution thereof. "Nor can punctuation marks be allowed to give the contract an unconscionable and inequitable meaning." 13 C.J. 535; Holmes v. Phoenix Ins. Co. 47 L.R.A. 308, 39 C.C.A. 35, 98 Fed. 241. The defendant should have been permitted to identify the property described in its chattel mortgage, and to have shown that plaintiff knew or had notice of the property mortgaged thereby; but testimony as to the intent or purpose of one of the parties accompanying the use of a given expression is, of course, inadmissible.
Appellant alleges as error the ruling of the court upon the objection made by counsel, to the following question put to witness Hellstrom, relative to the value of the property alleged to have been converted, viz.:
Q. Were you acquainted with the fair value of those things you have mentioned at that time?
A. I was.
Q. What would you state was its fair value in November, 1921?
Judge Burke: We object to the questions on the grounds that the witness has not shown himself qualified in any manner; that the property enumerated is not claimed to be the property described in the complaint; that there is no claim that this property was taken by the defendant or by anybody on their direction, and it is objected to on the ground that it is generally incompetent, irrelevant and immaterial.
The Court: Overruled. *Page 334 
The property to which reference is made in the questions quoted consisted of opera chairs, picture machines, motors, electrical appliances, posters, curtains, piano, electric lamps, and like property used chiefly in a theatre or play-house. The witness is a lawyer, one of the counsel for the plaintiff in this case. No other qualification of the witness to testify to values of this property than herein recited is shown by the evidence. It is obvious this property is not of a class that would so commonly and so frequently come under the observation and fall within the general knowledge and experience of the witness as to raise a presumption of knowledge of values thereof; and, although it is not required of the witness that he be expert or skilled in the strict sense of these terms in order to give his opinion or estimate of the value of such property, and while there is no inflexible rule defining how much a witness must know to qualify him so to testify, yet it must be made to appear, where objection is raised to his qualifications, that he has had, and utilized, means superior to those available to the jury, for forming an intelligent opinion. 22 C.J. 578; 11 R.C.L. 56; Keith v. Haggart,2 N.D. 18, 48 N.W. 432; Minneapolis Threshing Mach. Co. v. McDonald, 10 N.D. 408, 87 N.W. 993; Company A, First Regiment v. Hughes, 49 N.D. 626, 193 N.W. 144, id. 205 N.W. 722; Watrous v. Baily, 222 Mich. 137, 192 N.W. 628; Geohegan v. Union Elev. R. Co. 266 Ill. 482, 107 N.E. 786, Ann. Cas. 1916B, 762. The witness was secretary and manager of the theatre company; this fact alone would not qualify him to testify to the values of its personal property. Company A, First Regiment v. Hughes, 49 N.D. 626, 193 N.W. 144, supra. Furthermore, it was the market value of the property, or, in the absence of a market therefor, the reasonable value thereof, at the time when and the place where the property is alleged to have been converted, that was in issue. The question as framed calls for neither the market value nor the reasonable value. For these reasons, it is our opinion the objection should have been sustained.
But one other feature of this law suit requires notice. As part of its proof that its said mortgage had been foreclosed, and as bearing upon the question of what property had been seized by it and sold under its foreclosure proceedings, the defendant offered in evidence the report of said foreclosure sale, after showing that a report had been made and filed. This report of sale was made by the person who conducted *Page 335 
the sale, as auctioneer. Objection to its admission in evidence urged by plaintiff's counsel was sustained, it manifestly appears from the record, for the reason that the auctioneer, a deputy sheriff of said county, had signed and sworn to the report as "auctioneer" and not as "deputy sheriff."
Section 8128, Comp. Laws 1913, provides that within ten days after the sale of any mortgaged (personal) property, the person making the sale shall make out in writing, a full report, under oath, of all the proceedings in such foreclosure, specifying particularly the property sold, the amount received therefor, and other details, and file the same in the office of the register of deeds of the county in which the sale was held, "which report shall be received in all courts as prima facie evidence of the facts therein stated."
In the case of Stutsman County v. Wright, 41 N.D. 167, 170 N.W. 326, this court said: "It is no part of a sheriff's duty to make foreclosure sales of chattel mortgages by advertisement. Under the provisions of the statute, such sales may be made by the owner of the mortgage or his agent or attorney. Comp. Laws 1913, § 8126. Manifestly, a sheriff who makes such foreclosure does not act in his official capacity as a sheriff."
Under the issues in this case, the defendant had the undoubted right to prove what of the property belonging to Rex Theatre Company it had taken under its mortgage. The statute provides for the report of sale and says in express terms that it shall be received in evidence in all courts as prima facie evidence of the facts therein contained. The report does not appear in the record. If no defect appears upon its face, it should, so far as the record shows, have been received in evidence.
For the foregoing reasons, it is ordered, that the judgment appealed from be, and the same is, reversed, and the case remanded to the district court for a new trial. Appellant will recover the costs of this appeal.
BIRDZELL, JOHNSON, and BURKE, JJ., and McKENNA, District J., concur.
Judges PUGH and McKENNA, District Judges, sitting in the places of CHRISTIANSON, Ch. J., and NUESSLE, J., disqualified. *Page 336